Cleveland H. Chandler, Plaintiff-Appellee, v. East St. Louis School District 189, St. Clair County, Illinois, Defendant-Appellant.

Gen. No. 62–F–2.

Fourth District.

April 19, 1962.

Robert H. Rice, of East St. Louis, for appellant.

Listeman and Bandy, of East St. Louis, for appellee.

HOFFMAN, PRESIDING JUSTICE.

This appeal involves the judicial review of a decision of the School Board of East St. Louis District 189, St. Clair County, Illinois. The Board dismissed plaintiff as a teacher for certain alleged acts of unprofessional conduct as a teacher. The Circuit Court, on review, reversed the decision of the Board on the grounds that it was against the manifest weight of the evidence. It is from the order of the Circuit Court reinstating the plaintiff as a teacher, that the School Board appeals.

The issue on appeal requires our careful consideration of the evidence.

The charges against plaintiff as a teacher were that he had a system of grading students which was directly related to the amount of ticket money turned in by them for various social functions; that he used lewd language in the classroom; and, that on one occasion in November of 1956 he attempted to seduce one of his girl students. One other charge was made, but it was dismissed by the Board.

A public hearing was held by the Board of Education commencing on November 18, 1959, and at its conclusion the plaintiff was dismissed.

To prove the charges against plaintiff, 3 witnesses were called. First was a 17 year old girl, Norma Brooks. She had been in Mr. Chandler's class in the previous spring term of school. She testified that plaintiff had stated that if they sold tickets they would pass the course even if they failed on their tests. This witness, though she didn't know if she passed or not, was taking the course over. She had absented herself during the occasions of several tests and thus was graded zero. All told, she was absent from class on 23 different times during the Spring term. She had sold tickets for social functions though she said she was never ordered by Mr. Chandler to sell them.

318

The second witness called to prove the charges was Diane Thomas. She was graduated the June prior to the hearing and had likewise been a student in Mr. Chandler's class. She said that students who didn't attend the social functions would have to take tests the following day but that those who went to the dances didn't have to take the tests. She further testified that Mr. Chandler told "nasty jokes" in the classroom, that the jokes involved sex and that he did this nearly every day. She said she felt she passed the course (though with an inferior grade) because she had sold tickets.

The third witness was Rosella Thomas, a graduate of January, 1957, over two and a half years prior to the hearing. She likewise said that those attending the dances didn't have to take tests the next day; that they had to pay the admission charge of the dances even if they didn't go; that Mr. Chandler told "off-color jokes" involving sex, and if the class didn't understand, he would explain the jokes.

The witness further testified that in the fall of 1956, around Thanksgiving, she belonged to a club which met on one occasion at Mr. Chandler's house and that after the meeting he drove all the girls home. She was the last one in the car. She claimed plaintiff drove to a dark street, parked and tried to kiss her; that plaintiff asked her for sexual intercourse; that she agreed to later on because she was scared at the time. She further stated that next day in class he said he "was out with a broad" and that he "couldn't get her to go all the way."

At the time of the hearing, this witness was married but separated from her husband. She further admitted that she was pregnant in October of 1956 and had a child the following July. She never complained to the principal of the school about the alleged action of plaintiff the night he was supposed to have taken

her home from his own house. She, too, claimed that a student had to sell tickets to social functions in order to get a good grade in his class and that he told jokes to the class during the "whole time." She admitted she was absent 17 times from the course.

Plaintiff took the stand in his own behalf and testified that he had been teaching 11 years in the East St. Louis system; that he taught the Drivers Education course at Lincoln High School ever since 1950; that the text he used was written under the direction of the American Automobile Association and that he used objective tests; that he kept a grade book for each group of students in which he also recorded attendance. After a test, he handed papers back to the class and went over the questions and collected them again for keeping to prove the grades.

He denied that he told his class they had to sell tickets to social or athletic events to get a grade. He claimed that there was no favoritism shown to students who sold more tickets than the other students. He said students did not have to pay for tickets they didn't sell. He liked athletics, having voluntarily assisted at coaching track. He had acted as assistant coach in football and baseball. Because of his love for sports, he sponsored social events to raise money for equipment. He instituted an after-prom dinner dance and an annual picnic. The social affairs had the approval of the school board. He likewise denied telling lewd stories.

He denied that the day after a dance some of his class took a test and others didn't. He denied, too, any attempt to seduce Rosella Thomas.

On behalf of the plaintiff, a number of witnesses appeared. One, Eunistine James, who was a student of Mr. Chandler in the fall of 1956, said she never heard him tell any lewd stories, never heard him refer to girls as "broads" and never heard him indicate

that a student had to sell tickets in order to get a grade in the course.

Another former student, Mrs. Ora Lee Adams, stated that she didn't know of any students selling tickets just to get a grade; and that she didn't remember him telling any jokes at all.

Sam Gilmore, Jr., who graduated from high school at age 15, testified that he wasn't led to believe he had to sell tickets to get a grade. He had never sold tickets and didn't belong to the Safe Drivers Club and didn't participate in its social activities. He didn't hear any profane language by Mr. Chandler. This witness at the time of testifying was a licensed minister of the Church of God in Christ.

Susie Standford, a former student of Mr. Chandler, likewise never heard any profane language nor did she hear that the class had to sell tickets to get grades. This was further testified to by Opal MacIntosh, a high school student at the time of the hearing.

Geraldine White testified she was a classmate of witnesses Diane Thomas and Norma Brooks and that she never heard any bad language; nor was she told she had to sell tickets in order to stay in the club or stay in the course; that Mr. Chandler was always a gentleman; that Norma Brooks was mistaken as she, Geraldine White, had never heard any language that wasn't proper.

Alverta Thomas, a student at Southern University majoring in education, testified that she was a student of Mr. Chandler. She said he ran his classroom in an orderly manner, and she didn't hear any profane language used by plaintiff.

Earline Cathion also said the class wasn't told they had to sell tickets, nor did plaintiff use profane language or tell lewd jokes.

Birdie Mae Blackman, a former student, testified substantially the same. Victoria Jones, a Spanish

teacher, chaperoned social functions for Mr. Chandler and she heard of no obscene language nor did she hear any student say that grades in Mr. Chandler's class were dependent on sales of tickets to the social functions.

L. T. Phinesse, an ordained minister in the Missionary Baptist faith, testified that Mr. Chandler was superintendent of the young people's division including 200 members, and he wanted to give him "a clean bill of health" and that Mr. Chandler was "not a vulgar man."

Ross Miller, the principal at Lincoln High for 10 years, testified that Mr. Chandler's fund raising activities for the athletic department were done with the knowledge of the Board and with consent and approval of him as principal. He had no occasion to have any criticism with reference to grades being dependent upon sales by Norma Brooks, Diane Thomas or Rosella Thomas. He testified, too, that Rosella Thomas didn't complain to him about Mr. Chandler trying to seduce her even though he (the principal) had had a conference with this student about her passing the course of Mr. Chandler. In connection with this girl passing, he said she agreed that plaintiff had given her a correct grade. He stated that he never heard Mr. Chandler use improper language and in his judgment, plaintiff was a good teacher and that parents had never accosted him with complaints about Mr. Chandler.

The assistant principal, Albert S. Moore, testified that his job was to check with teachers on complaints and to listen to complaints from children. On 3 or 4 times a week he visited Mr. Chandler's classroom, and he had talked to the students. He stated he would be surprised to hear Mr. Chandler use profane language; that neither Norma Brooks, Diane Thomas nor Rosella Thomas ever came to him and complained. A com-

mittee of children did, however, complain about selling tickets so he and the principal went to the room and explained, in Mr. Chandler's presence, that the students didn't have to sell tickets in order to get grades.

Lena Long, mother of Rosella Thomas, testified in rebuttal. She attempted to convey the impression that she had complained to Mr. Chandler about her daughter's passing and that he indicated that it was because she didn't go to the dances. The witness was very vague and admitted "I can't explain to you exactly how he said it . . ."

Ann Turner, a 1957 graduate, testified in support of Rosella Thomas' story that on one occasion Mr. Chandler took the girls home from his place and that when she got out of the car, the only one left in with Mr. Chandler was Rosella Thomas; that the next day he told the class he met a broad the night before but she "wouldn't go all the way."

One Delores Harkins testified that she was a student and was asked by Mr. Chandler to go out with him but she refused. This was specifically denied by Mr. Chandler.

In substance, this was the evidence in proof and in denial of the charges.

██ The principles guiding this court upon review of a decision of an administrative agency have been repeated on many occasions. In substance, a court in making a judicial review of the findings of the administrative agency can set the decision aside only if it is contrary to the manifest weight of the evidence. This, we pointed out in Zinser v. Board of Fire & Police Com'rs of Belleville, 28 Ill App2d 435, 172 NE 2d 33. However, the decision of the agency must be justified by the evidence. Gigger v. Board of Fire & Police Com'rs of E. St. Louis, 23 Ill App2d 433, 163 NE2d 541. See also Taylor v. Civil Service Com-

mission of City of Chicago, 33 Ill App2d 48, 178 NE 2d 200. The rules are the same when the administrative review is of a decision of a school board. See Board of Education v. County Board of School Trustees, 32 Ill App2d 1, 176 NE2d 633.

■ The school at which plaintiff had taught for a number of years was a large school with 900 to 1,000 students. Mr. Chandler had 5 classes a day with 40 to 50 students in each. Yet, the entire evidence in support of the charge of use of lewd language was given only in a general, vague fashion by but two witnesses. Their stories were their own conclusions without the benefit of specific instances. Their stories even standing alone are not too convincing and when reviewed in light of the many who testified against the charges, we are left with no alternative other than to say that the trial court correctly held that the manifest weight of the evidence is contrary to the Board's decision. The charge of an attempt at seduction was not proved at all.

■ ■ It is important to remember that whether charges are proved or not must be based on a review of the evidence only. Where the proof fails, the charge fails. To permit this *scanty evidence* to support a dismissal would completely destroy the spirit of the tenure law. The charges were harsh, particularly one of them. If proven, it would certainly support the Board's decision. But if there was proof, it wasn't brought out at the hearing. The Board must limit its decision to the evidence it hears at the hearing. We, too, are so limited in making this review.

The trial court did not err in its holding.

Affirmed.

SCHEINEMAN and CULBERTSON, JJ., concur.