BILLIE JEAN HAIGHT, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT No. 205, Defendant-Appellee.

(No. 74-266;

Third District—June 5, 1975.

BARRY, J., dissenting.

Drach, Terrell and Deffenbaugh, P.C., of Springfield (Robert E. Stine, of counsel), for appellant.

Stuart, Neagle & West, of Galesburg (Thomas G. West, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Plaintiff-appellant Billie Jean Haight appeals from a judgment of the circuit court which dismissed her petition for writ of mandamus and complaint for declaratory judgment against the defendant-appellee Board of Education of Community Unit School District No. 205, Knox and Warren Counties. Plaintiff, a nontenured teacher, first employed for the 1971-72 school year, sought to compel the Board to reemploy her as a full-time English teacher for the 1972-73 year. On March 29, 1972, she received timely notice from the superintendent of schools that her contract for the 1972-73 school year would not be renewed.

At a meeting of the Board on March 27, 1972, action to terminate

plaintiff's employment was taken. During that meeting, the Board went into executive session "to discuss personnel," and during the executive session decided to dismiss several teachers, including plaintiff. The minutes stated that the Board then returned to open session and by roll call vote authorized "the Superintendent of Schools, if this action becomes necessary, to send a notice of dismissal to one first year teacher and a notice of dismissal stating the specific reason therefore to one second year teacher * * *." At its next meeting on April 10, 1972, the Board approved the minutes of the March 27 meeting.

After this action was filed, the Board held a special meeting on July 27, 1973, and unanimously approved an amendment to conform the minutes to the action taken by the Board on March 27, 1972. The minutes as amended state:

> "In accordance with Section 24—11 of the Illinois School Code (Illinois Revised Statutes, 1971), it was moved * * * that the Board of Education authorize the Superintendent of Schools, if this action becomes necessary because either of the teachers hereafter named fail to resign prior to sixty days before the end of the school term, to send a notice of dismissal to Billie Jean Haight, who is a first year teacher in our school district * * *."

■■ The law of Illinois is undisputed that a school board may amend its minutes at any time to conform to what in fact occurred at a meeting. *Jewell v. Board of Education*, 19 Ill.App.3d 1091, 312 N.E.2d 659 (5th Dist. 1974); *Phenicie v. Board of Education*, 326 Ill. 73, 157 N.E.34 (1927).

Plaintiff contends that some of the testimony shows that the amendment does not reflect the actual events that occurred at the Board meeting. The trial judge heard the testimony of all the witnesses, including six members of the Board who attended the March 27 meeting and who voted approval of the amendment to the minutes on July 27, 1973, and he made an express finding that he believed the testimony that the amended minutes "show what actually occurred at that meeting." Although there was some conflict between the various witnesses, the credibility of witnesses is for the trial court to determine, and the findings of the trial judge will not be disturbed unless they are manifestly against the weight of the evidence. (*Jewell v. Board of Education.*) We must reject plaintiff's contention and hold that the minutes as amended are the appropriate official record of the March 27, 1972, meeting.

■■ The "Open Meeting Law" (Ill. Rev. Stat. 1973, ch. 102, par. 42) provides that a school board may hold a closed session to consider information regarding dismissal of an employee, "* * * but no final action may be taken at a closed session." Plaintiff contends this section requires "final action" be taken by the Board at a public meeting and that the

motion approved by the Board did not constitute "final action," but merely authorized the superintendent to send a notice of dismissal. A similar argument was considered in *Jewell v. Board of Education,* and we agree with the holding in that case. The decision to send a notice of dismissal is the decision to dismiss in the case of a nontenured teacher, and "final action" is the public roll-call vote. The Board did not unlawfully delegate to the superintendent its authority to dismiss a teacher. After the Board action, a member of the administrative staff may properly communicate the Board's dismissal action to a teacher. *Bessler v. Board of Education,* 11 Ill.App.3d 210, 296 N.E.2d 89 (3rd Dist. 1973).

Plaintiff's other contentions concerning alleged defects in Board procedure were corrected by the amendment to the minutes, and need not be considered.

Judgment affirmed.

ALLOY, J., concurs.

Mr. JUSTICE BARRY, dissenting:

At the hearing on plaintiff's petition, commencing August 6, 1973, plaintiff's exhibit 6 was admitted to evidence being the original minutes of defendant's open meeting of March 27, 1972, at which plaintiff was purportedly discharged. In respect to roll call # 13, relating to the public vote on the public motion purporting to constitute the final action on the question of plaintiff's dismissal, these minutes of the open meeting recite only as follows:

> "In accordance with Section 24—11 of the Illinois School Code (Illinois Revised Statutes, 1971) it was moved by Member Davis and seconded by Member Rozynek that the Board of Education authorize the Superintendent of Schools, *if this action becomes necessary,* to send a notice of dismissal *to one first year teacher* and a notice of dismissal stating the specific reason therefor *to one second year teacher* in our district with previous teaching experience outside the district. Such notice to be sent in accordance with Section 24—11 of the Illinois School Code. (Illinois Revised Statutes, 1971).
>
> On roll call the following Members voted AYE: Davis, Kelley, Lacy, Lillie, Mustain, Rozynek, Sauter (7). Motion carried. Roll Call # 13." (Emphasis added.)

The legal inadequacy of this public action of the Board is apparent and conceded. The resolution purports to delegate to the superintendent the power of determining the necessity of dismissing teachers and of determining which teachers. In *Elder v. Board of Education,* 60 Ill.App.2d 56,

208 N.E.2d 423 (1st Dist. 1965), it was said that the discretionary power vested in the Board of Education to hire or discharge teachers cannot be delegated.

The resolution is legally inadequate also for failure to comply with the directives of the so-called "Open Meeting Law" (Ill. Rev. Stat., ch. 102, par. 41 *et seq.*), which require that the public resolution name the teacher against whom final action is being taken. In *Jewell v. Board of Education,* 19 Ill.App.3d 1091, 312 N.E.2d 659 (5th Dist. 1974), it was held that under the requirements of the open meeting law, the power of the board to effect a dismissal of a teacher must be accomplished, to be effective final action, by a public roll-call vote by the board on a public motion, at a properly noticed public meeting, for adoption of a resolution of dismissal in respect to a specifically designated teacher.

The open meeting law provides as follows:

"§ 1. It is the public policy of this State that the public * * * boards * * * in this State exist to aid in the conduct of the people's business. It is the intent of this Act that their actions be taken openly and that their deliberations be conducted openly.

§ 2. All meetings of any legislative, executive, administrative or advisory bodies of * * * *school districts* * * * of this State * * * shall be public meetings * * *. * * *

This Section does not prevent any body covered by this Act from holding closed sessions to consider information regarding * * * dismissal of any employee * * * *but no final action may be taken at a closed session.*" (Emphasis added.)

The importance to the public of this legislative policy is emphasized by the detailed requirements of the act for public notice of meetings of school boards and by the remedies provided in the act for the enforcement of its provisions. A writ of mandamus is available where there exists probable cause to believe that its provisions will not be complied with, or where it is otherwise appropriate to ensure compliance. Persons violating its provisions are made guilty of a Class C misdemeanor. Its purposes, therefore, are not to be lightly esteemed, nor its application to the business of school boards in any manner doubted.

The record here shows that subsequent to the commencement of this cause by plaintiff, on February 14, 1973, challenging the legality of her dismissal, and after the cause was set for trial, defendant filed a motion for continuance for the asserted purpose of amending, at its next regular School Board meeting, the minutes set out in foregoing plaintiff's exhibit 6. Affidavits of board members Kelley, Lacy, Lillie, Mustain, Rozynek and Davis were attached in support of defendant's motion wherein each asserted that he is now and was on March 27, 1972, a member of defen-

dant's Board, and attended a meeting of the Board on that date. The affidavits assert, not that the official minutes recited in plaintiff's exhibit 6 are in any manner *inaccurate,* but that they are *"incomplete"* in respect to Roll Call # 13 "for failure to name the person involved." (Emphasis added.) As noted earlier, their legal insufficiency for incompleteness is obvious. The affiants each asserted an independent recollection, however, that such person involved in the resolution reported in plaintiff's exhibit 6 was plaintiff, and that at the next regularly scheduled meeting of the Board on August 13, 1973, he *will* vote to amend those minutes "to include the name of Billie Jean Haight in Roll Call 13." The cause was ordered continued to August 6, 1973. Subsequently, at the trial, defendant offered evidence that at a Board meeting held July 27, 1973, the official minutes of the meeting of March 27, 1972 (*i.e.,* plaintiff's exhibt 6), had been amended to read as follows:

> "In accordance with Section 24—11 of the Illinois School Code (Illinois Revised Statutes, 1971), it was moved by Member Davis and seconded by Member Rozynek that the Board of Education authorize the Superintendent of Schools, if this action becomes necessary because either of the teachers hereafter named fail to resign prior to sixty days before the end of the school term, to send a notice of dismissal to Billie Jean Haight, who is a first year teacher in our school district, and a notice of dismissal stating the specific reason therefor to Robert Torley who is a second year teacher in our school district with previous teaching experience, such notice to be sent in accordance with Section 24—11 of the Illinois School Code (Illinois Revised Statutes, 1971); and that the Superintendent change the grade level at which Sharon Matthews is teaching in our school system if he finds that this is possible."

The right of a school board to amend its minutes to conform them to the truth of what was spoken and voted upon in a public session cannot be doubted. (*Phenicie v. Board of Education,* 326 Ill. 73, 157 N.E. 34 (1927).) That right, however, is subject to the obvious limitation that it is not an authority to amend records to suit the Board's interests, pleasure or convenience, or to set up a state of facts which matches only "the intended effect" of what they did. (*Jackson v. School Directors of District No. 85,* 232 Ill.App. 102, 107 (1924).) The circuit court found, however, that "Each member of the Board called testified that the action taken by the Board at its meeting on July 27, 1973, did amend the minutes of the March 27, 1972, meeting so as to show what actually occurred at that meeting. The court believes that testimony." The majority of this court, on review, concludes that there is sufficient evidence in the record to support that finding and that we are bound to leave it undisturbed. I

dissent from that view; I am persuaded from this record that that finding of the circuit court is based upon the same misapprehension of law that prevailed throughout the testimony of the Board members, that the original minutes and the amended minutes mean substantially "the same thing" and that the amendment is, therefore, acceptable and legal because it "conforms with the action" intended by the Board in what it did. That conclusion of mine requires some discussion of the evidence.

The original minutes, identified as plaintiff's exhibt 6, were prepared by Donna Sharp, who is recording secretary for the Board and administrative assistant to the superintendent. She testified that it was and is her duty to attend Board meetings and to take minutes of the proceedings in shorthand and to transcribe them, which she did on March 27, 1972. She testified that she takes down *"precisely what is said and types it,"* and that plaintiff's exhibit 6 is *"precisely word for word* the motion * * * [she] * * * heard *in open session* [and] *is all* * * * [she] * * * heard in* regard to this resolution in *open session."* (Emphasis added.) "There was other discussion in executive session," she stated, "but this is *the only thing* that went on *in open session."* (Emphasis added.) She did not ever retract or modify that testimony, and it is not only wholly uncontradicted in this record but is fully corroborated. Barry Parker, superintendent, stated that on March 27, 1972, the Board had a policy of excluding the names of teachers from its minutes of open session meetings to avoid embarrassment. Although he did not elaborate on the mode of exclusion, there was no suggestion that it was effected by deleting anything from the "word for word" reports of Donna Sharp, which raises the inference, consistently with the testimony of Donna Sharp, that that policy was effected simply by not designating the names in the public resolution. The validity of that inference is solidly established by the testimony of the Board members. Ward Lacy testified that Donna Sharp is an accurate secretary and that the original minutes in which no names are designated are *"accurate"* but were made to save embarrassment, and have been changed. (Emphasis added.) Merrill Lillie testified that *"plaintiff's exhibit 6,* which is the * * * [original minutes designating no names] * * * *properly reflected what went on at that meeting."* (Emphasis added.) Richard Rozynek verified that "The secretary's [*i.e.,* Donna Sharp's] notations of Plaintiff's exhibit 6 *correctly reflect* what happened on March 27, 1972. I was told by attorney Thomas West that the resolution of amendment *must be passed. Plaintiff's Exhibit No. 6 correctly reflects what happened on the night of March 27, 1972."* (Emphasis added.) John D. Davis testified that "It was only after the last meeting here in Court that I first discussed amending the March, 1972 minutes with anyone. *Plaintiff's exhibit no. 6 correctly reflects* what happened [in open

session] on the night of March 27, 1972." (Emphasis added.) Joan Kelley related in respect to the resolution of amendment at the meeting of July 27, 1973, that the Board's attorney, Thomas West, said "this is the way the amendment *will have to read*." (Emphasis added.)

During the examination of the foregoing Board members by defense counsel, Thomas West, Board members Lillie, Mustain and Davis appear only to have corroborated the testimony of Joan Kelley that when the minutes were amended on July 27, 1973, we were "clarifying them"; we left the names out originally, she asserted, to save embarrassment. There is no question that in closed executive session on March 27, 1972, the members did vote on a resolution which specifically mentioned Billie Jean Haight, and that the Board members intended that their public roll call vote should implement that action. It is also clear, however, that the closed executive session is not "final action" within the meaning of the law.

It seems apparent that the recitations of plaintiff's exhibit 6, and the recitations of the amendment made on July 27, 1973, cannot both accurately reflect the truth of what transpired at the open meeting of March 27, 1972. The motion in the original minutes purports to authorize action in respect to only two teachers; the amendment relates to three. The former, on its face, purports to delegate to the superintendent the Board's authority to determine the necessity of effecting dismissals, and names no specific teachers and is illegal on its face; the amendment shows no improper delegation of authority to the Superintendent, and specifically names three teachers. Reading the testimony of the Board members with the required purpose of reconciling it, if possible, and of avoiding the necessity of rejecting any of it as self-contradictory, it seems apparent that plaintiff's exhibit 6, transcribed from shorthand notes made at the time, reflects "precisely" and "word for word" the "only official action taken by the Board" *in the open meeting* of March 27, 1972, and that in testifying to the conclusion that the amendment "conforms to the action taken" the Board members mean only to confirm that coming out of executive session "we knew [in our minds and memories] the names of the individuals involved" in roll call vote 13, and that the amendment shows "our way of thinking," when we acted to "save embarrassment," and "the intent" of what we were meaning to do, and is the "same thing."

Manifestly and legally, the resolution and final action reflected in the original minutes, and those reflected by the amendment, are not "the same thing." In my judgment, the finding of the circuit court here was a result of a misapprehension on that important point. The proof here does not show that the requirements of the open meeting law were met. The business of an executive closed session is wholly without legal effect. No

one has testified that plaintiff's exhibit 6 is inaccurate or incorrect; it has been asserted only that it is incomplete. If it is, it is so only for failure to show a "secretly intended" effect, and not for failure to show what occurred in open session. No one has testified that the submitted amendment reports truthfully the words spoken and the things done at the *open meeting.*

However laudable the Board's motives here in concealing identities "to save embarrassment," the legislature has clearly opted for the overriding policy of accountability. It is not our prerogative, or the Board's, to reject the importance of that public interest, or to exempt school boards from the express application of the Act. The legislative purpose should not be frustrated by convenient amendments to minutes to show the Board's "way of thinking," or to show the effect the members "intended" their action to have, upon the misapprehension that it is in any event "the same thing." Unless we are privileged to reject all the testimony that the original minutes "accurately" and "word for word" and "precisely" report the "only" *public resolution and vote* on March 27, 1972, and we are licensed, without any effort at reconciliation, to accept as different and conflicting proof, other conclusory testimony of the same witnesses that the amendment here "conforms to the action taken," we should conclude there was no final action of dismissal against plaintiff. I consider that we are not so privileged to read the record. In my view the judgment of the circuit court is contrary to the manifest weight of the evidence and to the law, and ought to be reversed.