KAREN GILLILAND, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF PLEASANT VIEW CONSOLIDATED SCHOOL DISTRICT NO. 622 OF TAZEWELL COUNTY, Defendant-Appellee.

Third District No. 74-289

Opinion filed February 13, 1976.

Drach, Terrell & Deffenbaugh, P.C., of Springfield (R. W. Deffenbaugh, of counsel), for appellant.

Moehle, Reardon, Smith & Day, Ltd., of Washington (G. Joseph Weller, of counsel), for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This appeal is a result of the dismissal of Karen Gilliland from her position as a tenured elementary school teacher with defendant Pleasant View Consolidated School District No. 622 of Tazewell County, Illinois. Karen Gilliland was dismissed by the defendant School Board on August 8, 1973, following a lengthy hearing. She filed a complaint for administrative review in the Circuit Court of Tazewell County. That court upheld the School Board's dismissal. Plaintiff has now appealed seeking reversal of the circuit court findings and reinstatement in her position as a tenured elementary teacher in the school district.

Plaintiff raises five points on appeal. First, that it was error for her to be required to pay for and file in the circuit court a copy of the transcript before the Board of Education as a condition of proceeding there under the Administrative Review Act. Second, the circuit court erred in disallowing plaintiff's petition for change of venue. Third, the Board of Education lacked the jurisdiction to dismiss the plaintiff because certain statutory requirements were not followed. Specifically the plaintiff claims the defendant School Board did not by resolution authorize her dismissal but merely asked for her resignation. Further plaintiff argues that the defendant failed to give her the written warning required by statute for remediable charges. Fourth, the plaintiff complains that the School Board's findings were contrary to the manifest weight of the evidence. Fifth, the dismissal of the plaintiff was improper, as the procedure required by statute for a tenured teacher's dismissal is uncon-

stitutional in that it violates the teacher's rights to due process of law and a fair hearing before an impartial tribunal.

The plaintiff was first employed by the defendant Board of Education for the 1969-1970 school year. She taught second and third grades. During the 1972-1973 school year she taught only the second grade. The school district involved is a rural one. During the 1972-1973 school year there were only 57 families living within the district and slightly over 100 children in school.

On November 13, 1972, Superintendent Gerald Pullen, without having been directed by the Board, discussed with plaintiff certain parent-type complaints generally, about her teaching. Following their conversation, Pullen had a letter typed and sent to plaintiff. The letter contained six separately numbered paragraphs setting out these complaints and the Board's concern regarding the plaintiff's teaching. The complaints consisted of expecting too much from students by giving homework without specific directions, lack of teacher-pupil rapport, worrying and frustrating students who now hate school, sending students unattended to the library, the plaintiff being late for work and spending excessive time in the lounge. The following day the defendant Board directed Superintendent Pullen to send a second letter to plaintiff entitled "Board Concerns." The complaints contained in this second letter consist of several questions of plaintiff. That letter, in pertinent part, reads as follows:

"1. Has one or more of your second graders been responsible for writing pupils' names on the board for talking while you were out of the room, with the understanding that when you returned, and if a pupil had been talking and had his name on the board that he would be punished?

2. Have you had the custodian in your room to supervise your youngsters while you were out of the room at times?

3. When you have pupils sitting at the library table near the office, who is supervising your classroom? If you have pupils at the library table near the office, are you assisting them and supervising them?

4. Are you still keeping pupils in from recesses as a course of punishment if they do not have work completed or for other valid reasons?

5. Are your daily assignments being clearly explained?

6. Jerking youngsters by the arm on first contact for disciplinary purposes may not be the best approach on first contact to let that pupil know he has done something wrong."

At no place in either the November 13, or November 14, letter is any

mention made that if the complained-of items were not remedied, the plaintiff would be dismissed. There is also no showing in the testimony of Superintendent Pullen or any board member that during discussions with plaintiff she was warned to correct the complained-of defects or face dismissal.

On March 19, 1973, a special meeting of the Board of Education was held. The meeting was continued to Mach 21, 1973, and on that date a resolution was passed asking for the plaintiff's resignation. The original minutes of the March 19 and 21, 1973, meetings reflect that only a *motion to request plaintiff's resignation was carried.* The record indicates that the plaintiff declined to accept the defendant's offer to resign. Subsequently on March 30, 1973, defendant notified plaintiff by letter of her dismissal as a tenured teacher. That notification letter set up the following causes for her dismissal:

"1.  Incompetency
    (a) ruining pupil's attitude toward school.
    (b) lack of teacher-pupil rapport. Pupils need clearer instructions on work.
    (c) irregular work assignments.
    (d) display of affection to compensate for previous harsh discipline.
    (e) general teaching incompetency.
2.  Cruelty
    (a) grabbing pupils by arm, hair or shoulder.
    (b) having child sit on the floor because she did not have her spectacles. The child's mother had sent a note informing you that her spectacles were being repaired.
    (c) harassing slow pupils and shouting at students.
    (d) uncontrollable temper.
3.  Negligence
    (a) leaving your class unattended.
    (b) keeping pupils from recess and physical education class because school work was incomplete.
    (c) sending children to the library to complete work unassisted and unsupervised.
4.  Best interests of school require your dismissal
    (a) parents allege your incompetency.
    (b) disciplinary methods and conduct as a teacher are too severe, affecting children's health and welfare."

Also contained in that letter was a statement by the Board of Education that the causes for plaintiff's dismissal are "non-remediable." Then, on May 14, 1973, the minutes of the March 19 and 21, 1973, meeting were

amended, at the suggestion of defendant's counsel, to reflect the motion then carried was in fact one to dismiss plaintiff in addition to requesting her to resign, and to become operative if she chose not to resign.

The plaintiff opted for a public hearing on her dismissal and demanded a bill of particulars which was furnished to her. At the opening of the public hearing on June 4, 1973, plaintiff objected to the School Board's jurisdiction to dismiss her. The plaintiff contended primarily that the Board lacked jurisdiction to proceed in that the alleged reasons for her dismissal were all on their face remediable and since the Board had not given written notice in writing, stating specifically the causes which, if not removed, would result in formal charges of dismissal, they lacked jurisdiction to proceed. In addition to this objection at the outset of the public hearing, plaintiff also argued that the defendant lacked jurisdiction because the only valid action taken by the Board of Education at the March 19 and 21, 1973, meeting was to ask for plaintiff's resignation. The defendant ruled against plaintiff on both objections and proceeded with the public hearing on the merits. Plaintiff renewed her objections to the defendant's lack of jurisdiction on administrative review in the circuit court. The circuit court also ruled adversely on these objections to the School Board's jurisdiction, and from that ruling the plaintiff has appealed to this court.

In our view of this case the primary issue is whether defendant had jurisdiction to dismiss plaintiff. Section 24—12 of the School Code requires that certain procedures will be followed when charges in the notice of dismissal are based upon causes that are remediable. Those procedures are set forth in section 24—12 (Ill. Rev. Stat. 1973, ch. 122, §24—12), which in pertinent part reads:

> "Before service of notice of charges on account of causes that are considered remediable, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges."

■■ There is no serious doubt that a board of education has the authority to determine initially whether its grounds for dismissal are remediable or irremediable. Then at the dismissal hearing, the board must make a finding of fact determining whether the evidence established that the causes were remediable. We must decide whether the Board gave proper notice and made proper findings of fact.

■■ The defendant, in the formal notice of dismissal and accompanying causes for discharge, determined that such causes were irremediable. It then became incumbent upon the defendant to prove at the subsequent public hearing not only that the alleged causes actually existed, but also by substantial evidence that the causes upon which the charges were

based were not remediable. Whether the causes for dismissal are remediable may and must be considered by this court upon review, both as to the Board's initial determination and its ultimate finding after the public hearing. If that finding is against the manifest weight of the evidence, we must reverse. *Hauswald v. Board of Education,* 20 Ill. App. 2d 49, 155 N.E.2d 319 (1958).

After examining the extensive case law on the subject of irremediable causes we observed a distinct standard established by the Illinois courts. A cause resulting in dismissal is irremediable where damage has been done to the students, the faculty or the school itself, *and* the damage could not have been corrected even if warnings had been given by the teacher's superiors to the effect that if the causes were not corrected, charges would be brought seeking the teacher's dismissal. (*Yesinowski v. Board of Education,* 28 Ill. App. 3d 119, 328 N.E.2d 23 (1974); *Reinhardt v. Board of Education,* 19 Ill. App. 3d 481, 311 N.E.2d 710 (1974); *Werner v. Community Unit School District No. 4,* 40 Ill. App. 2d 491, 170 N.E. 184 (1963); *Wells v. Board of Education,* 85 Ill. App. 2d 312, 230 N.E.2d 6 (1967).) By applying this standard to the facts of the case at bar we conclude that the various causes set out as grounds for plaintiff's dismissal would not cause substantial irremediable damage to the students, the faculty, or the school. Further we believe that even considering the cumulative effect of the combined causes over some period of time would not render them irremediable in this case. See *Glover v. Board of Education,* 21 Ill. App. 3d 1053, 316 N.E.2d 534 (1974).

Comparing the 14 causes alleged by defendant to be irremediable grounds for dismissal with similar causes in cases cited to the court, a marked similarity appears. Although many of the allegations portray the plaintiff as a defective and unsuccessful school teacher, none of the evidence of her alleged faults is so serious or likely to cause uncorrectable damage as to be irremediable under Illinois law. (*Yesinowski v. Board of Education; Werner v. Community Unit School District No. 4; Hutchison v. Board of Education,* 32 Ill. App. 2d 247, 177 N.E.2d 420 (1961); *Allione v. Board of Education,* 29 Ill. App. 2d 261, 173 N.E.2d 13 (1961); *Smith v. Board of Education,* 19 Ill. App. 2d 224, 153 N.E.2d 377 (1958); *Wells v. Board of Education; Chandler v. East St. Louis School District 189,* 35 Ill. App. 2d 317, 182 N.E.2d 774 (1962); *Lusk v. Community Consolidated School District No. 95,* 20 Ill. App. 2d 252, 155 N.E.2d 650 (1959); *Hauswald v. Board of Education.*) Causes 1.(3) and 4.(a) particularly in defendant's notice of dismissal are not specific charges of incompetency but are just allegations of incompetency in terms too general to appraise plaintiff of what she did wrong.

In fact they do not adequately appraise this court sufficiently to form any basis for review. Some of the remaining grounds for plaintiff's dismissal concern parental complaints about plaintiff's teaching techniques and their effect on students. Defendant charges plaintiff with lack of teacher-pupil rapport and ruining students' attitude toward school. Specifically some of plaintiff's students hated school. Such a charge could be made against almost any teacher in the Illinois school system. Some students in every class will, for various personal reasons, dislike school. This is a small rural school district and the record indicates that some children other than those complaining did well and did not hate school. The evidence presented did not support that charge by the School Board.

Other of the 14 causes upon which plaintiff's dismissal was based revolved around her teaching methods and discipline. Defendant and many of the complaining parents felt it was improper for plaintiff to assign homework to second and third graders; that the homework was not accompanied by sufficiently clear instructions; that the work assignments given to her students were irregular. Some of the evidence produced at the hearing before the Board of Education supported those charges. Even admitting these to be defects, none were so damaging or serious that they could not have been corrected. The charges concerning plaintiff's disciplinary techniques are also remediable in nature. Shouting at students, having them stand against the wall or sit on the floor, sending pupils whose homework is unfinished to the library unsupervised to complete it, having students write the names of misbehaving students on the black board while she is out of the room, grabbing pupils by the arm, hair or shoulder as necessary to correct them and keeping pupils from recess and physical education as punishment can be considered teaching deficiencies of plaintiff. Regardless of the evidence produced at the hearing in support of the charges made against plaintiff little or no evidence was produced to support the Board's conclusionary finding that all of the charges were irremediable. Such a finding of irremediable causes without factual support in the record was found to be against the manifest weight of the evidence in the case of *Miller v. Board of Education*, 51 Ill. App. 2d 20, 200 N.E.2d 838 (1964). We accordingly hold that the finding that the causes in the instant case are not remediable is also against the manifest weight of the evidence.

■■ Because we find all the various grounds advanced by the defendant for dismissing plaintiff to be remediable it is necessary to decide if plaintiff was given the proper statutory warning required before a tenured teacher can be dismissed. The tenure act is essentially proce-

dural and must be strictly complied with by a school board in dismissing a tenured teacher. The teacher must be given written warning notice of the remediable causes, allowing a sufficiently reasonable time to correct those causes before formal charges of dismissal result. Not only must the statutory written warning notice be given in sufficient time to allow for correction of the causes by the teacher, but the notice must categorically state that if the causes are not corrected charges of dismissal will be filed by the school board. In the instant case, plaintiff received several written documents which, it is asserted, satisfy the statutory written warning notice requirements. Specifically the defendant refers to the November 13, 1972, letter from Superintendent Pullen and the November 14, 1972, letter that the defendant Board directed Pullen to send to plaintiff. The November 13 letter can not be considered a notice of remediable causes because the Board of Education did not authorize Pullen to send that letter (which primarily contained a number of parental complaints about plaintiff). Pullen sent that letter on his own authority as superintendent and not for the defendant. Though the Board can direct the superintendent to communicate the Board's action, the superintendent's action may not be substituted for the authority of the Board of Education, as action in conjunction with the discharge of a teacher is a discretionary power of the Board and that power may not be delegated to a superintendent. (*Bessler v. Board of Education*, 11 Ill. App. 3d 210, 296 N.E.2d 89 (1973).) The letter dated November 14, 1972, also will not satisfy the statutory warning notice of remediable causes even though it was sent with the full authority of and at the direction of the defendant. That letter was entitled "Board Concerns" and merely asked a series of questions of plaintiff concerning the parental complaints set out in the November 13, 1972, letter from Pullen. Most importantly and regardless of the content otherwise neither letter contained any indication that if the plaintiff did not correct her allegedly deficient teaching she would be dismissed. In our opinion neither letter sufficiently complied with the statutory requirement. (See *Paprocki v. Board of Education*, 31 Ill. App. 3d 112, 334 N.E.2d 841 (1975).) We find the charges upon which plaintiff's dismissal was based were remediable and that the defendant failed to give plaintiff the required statutory warning which resulted in the defendant lacking the jurisdiction to proceed with the dismissal of plaintiff. *Everett v. Board of Education*, 22 Ill. App. 3d 594, 317 N.E.2d 753 (1974).

Plaintiff raises as a secondary issue whether the defendant Board lacked jurisdiction to proceed with the dismissal because the resolution adopted by the Board only requested her resignation and did not actu-

ally dismiss her. Although the minutes of the March 19, 1973, meeting only record that plaintiff's resignation be requested, the School Board subsequently (May 14, 1973) amended the minutes of the earlier meeting to read that a resolution actually dismissing plaintiff was passed. It is conceded by plaintiff that the defendant Board has the authority to later amend the minutes of its meeting to reflect what *actually* occurred. Plaintiff alleges that the amendment here did not correct the minutes of the March 19, 1973, meeting to properly record what occurred there, but rather attempted to remedy the legal inadequacy of the action taken at that meeting by amending the minutes recording action not actually taken. This same issue was raised in a recent case before this court. The reasoning and cases cited in this court's majority decision of *Haight v. Board of Education*, 29 Ill. App. 3d 48, 329 N.E.2d 442 (1975), also control the issue presented in the instant appeal. Plaintiff has failed to demonstrate by any substantial evidence in the record that the amendment involved here did any more than merely correct the minutes of the March 19, 1973, meeting. From the record it appears that the amendment did contain an accurate and correct report of the earlier proceedings.

Plaintiff as an incidental issue attacks the constitutionality of the Illinois statutory removal procedure of a tenured teacher and the facts in this case present a classic example of the simultaneous roles in which a school board may function in such a dismissal proceeding. (See *Miller v. Board of Education*.) The defendant assumed the roles of complainant, investigator, prosecutor, judge, and witness. These incompatible roles functioning within an administrative hearing body lead to abuses and unfair hearings.

While we acknowledge the difficulty presented where the small size of the school district necessitates hearing testimony from close relatives of board members, we suggest that such testimony should be corroborated. Here facts from the record established that five of the seven board members had wives or children testifying and bringing charges against the plaintiff. Not only were the complaints initiated by the defendant Board and the witnesses related to the board members, but after the formal charges were made against plaintiff, the board members, the superintendent, Gerald Pullen, and the attorneys for the defendant Board solicited complaints about the plaintiff from parents and other school personnel in an attempt to build a case against the plaintiff. The defendant Board expended effort to manufacture competent grounds on which to base their dismissal of the plaintiff. Nine of the witnesses called by the Board to testify were either the wife, son or daughter of a member of the defendant School Board. Of the remaining

witnesses called by the defendant 10 were either employees of the defendant Board, or actively solicited to testify by defendant *after* the charges against plaintiff had been formalized. It is obvious that a conscious effort to build a case against the plaintiff, above and beyond their duty as an administrative board, is demonstrated by the record; that a prejudicial atmosphere was created.

While we do not intend to condone such unfairness in a dismissal hearing because of the view we take of this appeal we will not resolve the constitutional issue, or the other issues raised.

We hold the finding of the defendant that the causes for plaintiff's dismissal were irremediable is against the manifest weight of the evidence, and because the written warning notice required by statute was not given, defendant acted without the proper jurisdiction in dismissing plaintiff. We find that plaintiff is entitled to her costs incurred.

The order of the Circuit Court of Tazewell County affirming the School Board's dismissal of Karen Gilliland is reversed.

Judgment reversed.

STOUDER, P. J., and STENGEL, J., concur.