Richard L. Hauswald, Appellee, v. Board of Education
of Community High School District No. 217, Cook
County, Illinois, Appellant.

Gen. No. 47,492.

First District, Second Division.
December 16, 1958.
Released for publication February 4, 1959.

Dale, Haffner & Grow, of Chicago (John M. Wejman, and Mitchell J. Overgaard, of counsel) for appellant.

Rugen, Ligtenberg & Goebel, of Chicago (John Ligtenberg, of counsel) for appellee.

JUSTICE KILEY delivered the opinion of the court.

This is an Administrative Review proceeding to review defendant Board's order dismissing plaintiff as teacher in the Argo Community High School. The trial court reversed the order and the Board has appealed.

Plaintiff began to teach in the high school in 1931. On August 6, 1957, the Board served him with notice of his suspension as of September 1, and his dismissal as of November 2, 1957. A copy of the Board's resolution of dismissal setting forth the charges accompanied the notice. Briefly, the charges were that plaintiff made "extensive and exaggerated" use of "free reading time" instead of giving adequate instruction in grammar; "objected to and refused to comply" with an administrative policy of weekly written themes; failed to keep lesson plans available for his substitute teachers; and failed to co-operate with the superintendent "in the above and other matters."

Plaintiff qualified for "contractual continued service" under the Teacher Tenure Law, Ill. Rev. Stat. 1957, ch. 122, § 24—2, and was therefore entitled to the benefits, pertinent here, of § 24—3, ". . . the dismissal . . . shall not become effective until approved by a majority vote of all the members of the board

upon specific charges and after a hearing. . . ." If he was suspended pending the hearing, where the Board's opinion was that the interest of the school required it, and was later acquitted, he was not to suffer loss of salary. Before serving him with notice of charges "that may be deemed to be remediable" he was to be given reasonable warning "in writing," stating specifically the "causes" which, if not removed, may result in charges.

Plaintiff demanded a public hearing, which was given him, and a bill of particulars, which was refused. The hearing was held on September 30 and October 1, 1957, and witnesses for the Board and plaintiff were heard. Before the testimony was taken plaintiff moved unsuccessfully to dismiss the proceeding on the grounds discussed later in this opinion.

After the hearing the Board found from the testimony and exhibits that the charges were proven and were sufficient reason for his dismissal, that the "causes" were not remediable and that the best interests of the school required the dismissal. On review the Circuit Court decided the Board's order was "not supported by substantial evidence and was against the manifest weight of evidence"; and that the findings that the "causes" were not remediable and that the dismissal was required in the best interests of the school were against the manifest weight of evidence. The order was reversed and the Board was ordered to reinstate plaintiff.

We think the nub of this case is the question whether the trial court had the power to decide that the Board's finding that the "causes" were not remediable was against the manifest weight of evidence; and if it had the power to make that finding, whether the finding is right. If the "causes" were remediable, plaintiff was entitled to a notice in writing to remedy them, Ill. Rev. Stat. 1957, ch. 122, § 24—3, and it is conceded no notice for that purpose was given him.

51

■ "The Teacher Tenure Law was enacted primarily for the protection of Illinois teachers who, prior to its enactment in 1941, served at the pleasure of the boards of . . . education. Its object was to improve the Illinois school system by assuring teachers of experience and ability a continuous service and a rehiring based upon merit rather than failure to rehire upon reasons that are political, partisan or capricious." Donahoo v. Board of Education of School Dist. No. 303, 413 Ill. 422, 425. This court in Biehn v. Tess, 340 Ill. App. 140 at page 148 states, on authority of Anderson v. Board of Education of School Dist. No. 91, 390 Ill. 412, that the Tenure Law creates a new liability on the part of school boards and as such it ought to be construed strictly in favor of the Board. This was said in deciding that a principal did not come within the protection of the Tenure Law. In the Anderson case the Supreme Court stated that the Tenure Law makes a contract of "contractual continued" service following the probationary period, where none would otherwise exist and therefore created a new liability. It cited the general rule of statutory construction (59 C. J. 1129) that such a law should not "extend or enlarge the liability" and construed the Tenure Law against a teacher claiming benefits of the Act. The court construed the Act strictly and precluded plaintiff from protection of the Tenure Law. These cases involved persons trying to qualify under the Law.

■ Neither the Biehn nor Anderson cases are authority for a strict construction of the Tenure Law with regard to persons who qualify for its protection, as plaintiff here has by his admittedly "contractual continued" service. He is entitled to a construction which is consistent with the prime purpose of protecting teachers.

■ It is true that the courts have held that the Boards had discretion in the first instance to determine whether the "causes" for which plaintiff was

52

dismissed were remediable, Meridith v. Board of Education of Community Unit School Dist. No. 7, Christian County, Illinois, 7 Ill.App.2d 477, Eveland v. Board of Education of Paris Union School Dist., 340 Ill. App. 308. This is not to say that a court does not have the power on review to test the exercise of the Board's discretion and determine whether there has been an abuse. The Supreme Court in Hartmann v. Board of Education, Westville Tp. High School Dist. No. 220, 356 Ill. 577, 580, stated that the Board was not free "to arbitrarily or without cause" dismiss teachers. The Tenure Law would have no value as a protection to teachers if Boards were free to dismiss teachers for "cause" deemed by them to be irremediable and the decisions were insulated from judicial review. In the Meridith case and in Pearson v. Board of Education, Community Unit School Dist. No. 5, Macoupin County, 12 Ill.App.2d 44, cited by the Board, the courts passed on the question whether the findings that the "cause" was irremediable were against the manifest weight of evidence. And in Smith v. Board of Education of Community Unit School Dist. No. 1 of Coles and Cumberland Counties, Illinois, 19 Ill.App.2d 224, the Third District held that the Appellate Court has the duty to determine whether the finding of irremediability is against the manifest weight of evidence. We think the trial court had the power to pass on the question.

We disagree with the Board that "to make the question of irremediability a question of fact would necessarily involve the taking of testimony from qualified witnesses as to their opinion." It is our view that there is ample basis in the record before us upon which to infer that the "causes" were or were not remediable. Expert psychological testimony as to plaintiff's probable future conduct is not necessary.

The Board decided that the best interest of the school required plaintiff's dismissal because of the several charges made. There is no evidence that plain-

53

tiff was given a "directive" to change his method of teaching English. A resolution of the Illinois Association of English Teachers—to which plaintiff did not belong although he once belonged to the National Council of Teachers of English—was deposited in his mail box, by the assistant principal, with the recommendation by the Association of weekly written themes underlined in red. The principal told plaintiff his English program "should be weighted strongly" with theme writing. The assistant principal had "numerous discussions" with plaintiff about English instruction, expressing "disapproval" of "free reading" once a week and "urged" more emphasis on composition and grammar.

Plaintiff was always "very argumentative" during the conversations and thought the written work was not "so important," but from all that appears his superiors had no firm policy which plaintiff was required to adopt, and either because his superiors did not wish to upset him, because of an earlier nervous sickness or out of respect for academic freedom, the point was left flexible and arguable. Plaintiff called for written themes not weekly, but semimonthly, in one class, and slightly less than that in the other class. This shows plainly that the "cause" was not completely irremediable even though no "directive" was given.

Because "Johnny" could not read or write the University of Illinois decided in 1956 to impress upon high school teachers the importance of teaching English properly. Pamphlets containing the University's standards of freshman English were ordered by the Argo High School principal. Ninety pamphlets were given plaintiff with "instructions" to give one to each of his "college bound" 1956 senior English students for use in his class, and that the balance be kept for the 1957 seniors who were "college bound." No reason is given why the superintendent did not keep them. Fifty-eight

54

copies of the pamphlets were found in plaintiff's class-room desk during the following summer. It is argued that he had two "college bound" classes in each of two years, each one having 25 to 30 students and that he was clearly delinquent in not following the "instructions." If he gave out 25 in each class he should have had 40 pamphlets in his desk instead of 58. There is nothing in the record to indicate that if there was a firm policy or follow-up that plaintiff would not have distributed the other 18 pamphlets, but if he did he would not have enough for the 50 students in the 1958 class. So much for the charges with respect to the teaching of grammar.

We cannot see how we could infer from plaintiff's absence from his class from five to ten times a week that he had a "penchant for roaming." It is admitted, as we should expect, that "some" absences were for "justifiable reasons." His superiors "mentioned" this to him on eight occasions during the school years of 1955–1956 and 1956–1957, and the assistant principal "strongly reprimanded" him in April 1957, as follows: "You have been out of your class quite a bit lately. I see you out in the hall and you are talking to a teacher and keeping her away from class." There is no testimony about why other teachers were in the hall nor about who was "keeping" whom away from class. There is no evidence of any severe consequences to the students or school from plaintiff's absence from class and nothing to suggest that a stronger reprimand in a written notice would not have corrected anything that was wrong in this respect.

What we have said with respect to absence from class applies to his claimed delinquency in carrying out his duties as counsellor.

Finally we come to the Plan Book, which is a device for teachers outlining in advance their semester's work for their own good and for continuity should a substi-

55

tute be needed, and for good school administration. In 1953 plaintiff had been absent for an extended period and had left no plan for the substitute. A superior "discussed" this with him then. The proof against plaintiff at the public hearing was that his superiors had found an unused Plan Book in his desk. Plaintiff introduced in evidence a Plan Book bearing date "1956, 1957." This exhibit is not "falling apart" although it is "worn" and we cannot tell whether it is "old," as the Board claims, but it is used. It is likely, as the Board's brief argues, that the book was not a new one which plaintiff said he obtained in January of 1957. It is probably one he got in the fall of 1956. But there was no cross-examination of plaintiff about the condition of the book and no indication that his "integrity" was suspected or that he could not have explained several discrepancies. The Plan Book appears to have a change of seating arrangement for the second semester, and changes, through erasures and writing over the erasures, of class work over that of the first semester. The class records for the first semester indicate plaintiff was lax in filling out the space for "Outline of Work Required of Class." But again there is no reason inferable from the record why plaintiff would not have improved if his superiors started in 1953 to complain and demand in writing that he give these details more attention. Plaintiff's "causes" were not like those of the plaintiff in Jepsen v. Board of Education of Community High School Dist. No. 307, Kankakee County, Illinois, 19 Ill.App.2d 204, where the plaintiff accused the principal of knowingly permitting an ineligible player to participate on the school football team. Once this accusation had been made the damage was done and could not be remedied. Nor are plaintiff's "causes" like the "uncontrollable temper cause" in Pearson v. Board of Education, Community Unit High School Dist. No. 5, Macoupin County, 12 Ill.App.2d 44.

56

■ We conclude that the trial court was justified in deciding that the Board's order was "not supported by substantial evidence and was against the manifest weight of evidence," and that the finding that the "causes" were not remediable is against the manifest weight of evidence. Therefore, plaintiff under the Teacher Tenure Law was entitled to "reasonable warnings in writing" and since this was not done, he was illegally discharged. It is therefore unnecessary for us to consider other points raised by the Board.

Affirmed.

LEWE, P. J. and MURPHY, J., concur.