Lesah Jouett Allione, Plaintiff-Appellant, v. Board of Education of South Fork Community High School District No. 310, Christian County, Illinois, Kincaid, Illinois, et al., Defendants-Appellees.

Gen. No. 10,300.

Third District.

February 21, 1961.

Rehearing denied April 6, 1961.

 

R. W. Deffenbaugh, of Springfield, for appellant.

Harold Broverman and Scott Hoover, of Taylorville, for appellees.

CARROLL, PRESIDING JUSTICE.

This appeal emanates from a controversy concerning the dismissal of plaintiff as a teacher by the Board of Education of South Fork Community High School District No. 310 in Christian County, Illinois.

Plaintiff had been employed as a home economics teacher in the district for more than two years and had attained contract continued service status under the Teacher-Tenure Law.

On March 19, 1958, the defendant Board voted to rehire plaintiff for the 1958–1959 school year, at an annual salary of $4,100. Minutes of its meeting of April 15, 1958 show that the Board agreed to add $100.00 to her salary, making a total salary of $4,200 for 10 months service. At a meeting on May 3, 1958, the Board approved a motion to the effect that plaintiff's failure to return her contract in the allotted 30 days be taken as conclusive evidence that she does not seek re-employment as a home economics teacher. At the same meeting the Board voted to hire Katherine Constantino to take plaintiff's position as home economics teacher for 1958–1959 at a salary of $4,200. After its action of May 13, 1958, the Board learned that since plaintiff was under tenure she was not required to return her contract within 30 days. The next action taken by the Board with reference to plaintiff's

employment was at its regular meeting of July 10, 1958. The minutes of such meeting disclosed the following:

"A motion was made by Roseberry to send a dismissal letter to Lesah Jouett Allione by School Attorney Harold Broverman on July 11, 1958. Motion was seconded by Driskell. The vote was as follows: Roseberry, aye; Driskell, aye; Dambacher, aye; Pagliai, aye."

On July 11, 1958, the Board sent plaintiff a dismissal notice which was as follows:

"Dear Mrs. Allione:

This is to inform you of your dismissal as a teacher of South Fork Community High School District No. 310, Christian County, Kincaid, Illinois. The dismissal date is November 2, 1958. Furthermore, you are hereby suspended effective July 11, 1958, without pay.

This action has been taken by the Board of Education because of the following reasons:

1. Your actions and general attitude in the past have been detrimental to the best interest of the school.
2. Insubordination.

It is the unanimous opinion of the Board of Education that this case is not remediable."

Plaintiff requested and was granted a public hearing which began on August 27, 1958 and after numerous adjournments was completed on February 5, 1959. At the conclusion of the hearing the Board found from the testimony that plaintiff had been guilty of insubordination and that her actions and general attitude in the past had been detrimental to the best interest of the school and notified her that it was confirming her dismissal as of July 11, 1958. Plaintiff then

brought this administrative review action to review the Board's decision. The trial court confirmed the decision and plaintiff appeals.

The first question presented by this record is whether the Board was justified in initially determining that the causes specified in the dismissal notice were not remediable. If such causes were in fact remediable, the plaintiff should have been afforded an opportunity to remedy them by warning in writing as provided by Section 24–3 of the School Code [Ill Rev Stats 1959, c 122, § 24–3], which insofar as pertinent here, reads:

"Before service of notice of charges on account of causes that may be deemed to be remedial, the teacher shall be given reasonable warning in writing, stating specifically the causes which, if not removed, may result in charges. The decision of the board as to the existence of reasons or causes for dismissal or removal shall be final unless reviewed as provided in Section 24–8 of this Act."

The single specific charge set out in the dismissal notice was "insubordination." The other general charge was that plaintiff's past conduct had been detrimental to the best interest of the school.

In its decision the Board made a finding of fact that plaintiff had been guilty of insubordination in defying the orders of John Pacotti, the principal of the school. The evidence heard by the Board as to this charge consisted of the testimony of Pacotti. He testified that in April, 1958, plaintiff sent two pupils from her classroom to the study hall; that plaintiff told Pacotti what she had done and that she would like to keep them in the study hall for a week; that Pacotti said to plaintiff "if you want to try it for a week, it is alright"; that at the end of the week he called the two pupils in and gave them permission to return to class; that one of the

pupils returned to class and the other was not admitted; and that he had no conversation with plaintiff concerning these two pupils other than at the time when she sent them to the study hall; and that he could not remember whether or not he told plaintiff that he was sending the two girls back to their classroom. We think this evidence falls far short of sustaining a charge of insubordination. It does not show that plaintiff was given any order or directive in connection with the disciplining of these two pupils. Obviously she could not be guilty of refusing to obey an order which was never given. There is also a lack of evidence showing that the alleged violation of any order had been called to the attention of plaintiff which would seem to have been the reasonable procedure under the circumstances.

In addition to finding the plaintiff guilty of insubordination, the Board made nine other specific findings of fact. In substance such findings were that plaintiff had been guilty of neglecting her duties, using insulting language towards pupils, stating to the principal that she would not make home visits which was part of her duties as a home economics teacher, in making false accusations against the principal, allowing her personal feelings to affect her treatment of pupils and in exhibiting "a complete lack of the sense of understanding, sympathy and fair play necessary in a teacher of young persons."

Much of the evidence on which the above findings were based was pure hearsay and should not have been considered. The competent evidence as to neglect of duty was furnished by Pacotti, the principal, who testified that he remembered that on one occasion in 1955 she left the school building for a part of a day because a noisy heating fixture in the home economics room had not been repaired. This witness further testified that on April 28, 1958 he had a conversation with

plaintiff regarding her contract for the next year; in which he told plaintiff that since she had not returned her contract within 30 days she was no longer employed; that he told her that in order for a school to receive certain moneys under the Smith-Hughes Act, home visitation must be made by the home economics teacher for two weeks before the beginning of a school year; and that plaintiff stated her contract was for 40 weeks and she would work only during the period for which she was hired. We do not think such evidence justified a finding that plaintiff was guilty of refusing to perform any duty required of her. If, at the time of the particular conversation to which the witness referred, the plaintiff had already been discharged as she was informed by the principal, what she said about her duties during the next school year would appear to have been immaterial.

The evidence upon which the Board found plaintiff guilty of using insulting language toward pupils, ridiculing them and their parents, consists principally of conversations between the children or between them and their parents, all of which was outside of plaintiff's presence. Such evidence was pure hearsay and should not have been considered. The secretary to the principal and the county superintendent of schools testified to conversations with plaintiff in which the latter voiced criticism of certain conduct of the principal and expressed an opinion as to his competency. There is no proof that anything said by the plaintiff in those conversations went beyond the ears of the witnesses who testified concerning the same. As to how such statements could or did affect the best interest of the school in question is in no way made clear. We think it unreasonable to assume that a teacher in private conversation may express her opinion of a fellow instructor only at the peril of losing her job.

■ An examination of the evidence in this record appears to clearly indicate that the Board proceeded upon the theory that its statement that the causes were not remediable was conclusive on that issue. However, as had been held in numerous cases, such a determination by the Board is subject to review by the courts. As was said in Hauswald v. Board of Education, 20 Ill.App.2d 49, 155 N.E.2d 319:

> "The tenure law would have no value as a protection to teachers if Boards were free to dismiss teachers for 'cause' deemed by them to be irremediable and the decisions were insulated from judicial review."

Likewise, in Keyes v. Board of Education, 20 Ill.App. 2d 504, 156 N.E.2d 763, this court said:

> "The determination of the Board in the first instance that the causes of dismissal are not remediable and its final decision on the hearing, are both subject to review. If the causes relied on in the instant case were in fact remediable, then the requirement that a written notice be given plaintiff was mandatory and failure to comply therewith, deprived the Board of jurisdiction."

In the instant case we think there was a complete failure of proof establishing the fact that the insubordination cause was not remediable.

■ ■ As to the other causes of dismissal we find no evidence of any detrimental consequences suffered by the school as the result of plaintiff's alleged misconduct. None of the Board's findings would appear to involve charges which could not have been remedied if plaintiff had been given notice to do so. Moreover, we think the record demonstrates that the question as to whether the causes were remediable received

little consideration at the hearing. The competent evidence relates only to isolated incidents and failed to disclose resulting injury to the school. To sustain the Board's conclusion that the best interest of the school required plaintiff's dismissal in the absence of proof supporting it, would amount to sanctioning the practice of arbitrarily dismissing teachers without regard to their rights under the Tenure Law. If, as asserted in defendants' brief, plaintiff had been guilty of "bad" conduct towards pupils and officials for a long time, it is difficult to believe that the existence of such a condition could have escaped the Board's attention until after it was discovered that plaintiff's employment had not been terminated and that two teachers had been hired to fill the one position. Likewise, the Board's action in voting to rehire plaintiff at an increase in salary would seem to be so inconsistent with and so clearly contradictory to the assertions made in the dismissal notice that we think it reasonably indicates that the action taken to discharge plaintiff was not initiated for the reasons assigned. We find no competent evidence in the record showing that any criticism of plaintiff's method of teaching or maintaining discipline in her classroom had ever been voiced by either the administrative head of the school or the school board. There is likewise no evidence that the standing of the school as an educational institution was in any manner affected by anything which the plaintiff did or failed to do. These circumstances together with the testimony heard on the hearing would seem to compel the conclusion that the Board's findings that the causes stated in the notice existed lacks substantial support in the evidence. Accordingly we are of the opinion that the finding of the Board that "this case is not remediable" and its subsequent order discharg-

ing plaintiff were both against the manifest weight of the evidence.

For the reasons indicated, the judgment of the Circuit Court affirming the decision of the Board is reversed.

Reversed.

REYNOLDS and ROETH, JJ., concur.