CHICAGO BOARD OF EDUCATION, Plaintiff-Appellee, *v.* ARTEE PAYNE, JR., Defendant-Appellant.

First District (2nd Division)    No. 80-1831

Opinion filed December 22, 1981.

Roosevelt Thomas, of Chicago, for appellant.

Michael J. Murray, of Chicago (Christine Holtz, of counsel), for appellee.

JUSTICE DOWNING delivered the opinion of the court:

The Chicago Board of Education (Board) sought the dismissal for cause of tenured elementary school teacher Artee Payne, Jr. (Payne), pursuant to section 34—85 of the School Code (Ill. Rev. Stat. 1977, ch. 122, par. 34—85). After an administrative hearing, an impartial hearing officer

ruled that the Board's dismissal of Payne was improper. On judicial review instituted by the Board, the circuit court of Cook County reversed the hearing officer's decision. The central question raised on Payne's appeal from the circuit court's ruling is whether the court erred in finding that the hearing officer's decision was against the manifest weight of the evidence and contrary to law.

On August 30, 1978, the general superintendent of schools instituted proceedings with the Board against Payne, charging him with conduct unbecoming a teacher in the Chicago Public Schools. This charge contained four itemized specifications, paraphrased as follows: (1) on or about February 6, 1976, Payne knowingly had in his possession a quantity of marijuana; (2) on or about January 19, 1978, Payne knowingly had in his possession a quantity of marijuana; (3) on or about the same date, Payne knowingly had in his possession a controlled substance; and (4) such conduct was irremediable. The Board adopted the superintendent's charge and specifications on the same date, and a hearing officer was appointed.

Hearings proceeded before that officer on four separate days.[1] Chicago policeman Thomas Skol related that he had stopped Payne for a traffic violation at about 5 p.m. on February 6, 1976. Skol asked Payne for his driver's license. As Payne was searching his pockets for the license, he pulled out a clear plastic bag containing a relatively small amount of a crushed green substance. Skol advised Payne of his rights. At some point during the ensuing conversation, Payne admitted that the substance was marijuana and was arrested. Skol recalled that Payne pleaded guilty to possession of marijuana in return for a sentence of probation. Skol did not believe that Payne was performing any duties related to education at the time of the arrest.

Sergeant Emmett Boyd of the Chicago Police Department testified that he executed a search warrant on Payne's residence, a motel room, on January 19, 1978. Boyd searched Payne and found a white envelope containing crushed green plant and a small vial containing white powder. Payne was arrested.

Raymond Principe, a director of the Bureau of Teacher Personnel for the Board, stated that Payne holds a teaching certificate which entitles him to teach intermediate and upper grade school children. The age range of such children was 10-13 years. Principe learned of Payne's entanglement with the police when his superior, Dr. Nina Jones, informed him about a newspaper article on Payne's 1978 arrest. He contacted Payne and subsequently held a conference with him, where Payne denied the charge contained in the article and advised Principe that his attorney had told him to make no further statements.

On cross-examination, Principe related that he had no opportunity to

[1] December 28, 1978; January 23, March 1, and May 18, 1979.

view Payne at work in the classroom. No teacher evaluations of Payne indicated that he was under the influence of drugs while at school. The reports stated only that Payne was a good teacher. No complaints related to the charges against Payne had ever come to Principe's attention. He was unaware of any of Payne's students becoming involved with drugs as a result of Payne having been their teacher.

Dr. Nina Jones, assistant superintendent of personnel for the Board, had never met Payne. He first came to her attention when "someone called [her] and indicated that a teacher * * * had been arrested on a narcotics charge." She discussed the case with Principe and then made a report to the general superintendent.

Dr. Jones stated that she believed illegal conduct on the part of a teacher would have a deleterious effect on the school system as a whole and would have an impact upon the particular school involved. Dr. Jones did not receive any complaints from any particular person concerning Payne. She noted that Payne's evaluations were satisfactory.

After presenting Dr. Jones' testimony, the Board rested. Payne called Jerry Hunter, one of his fellow teachers. Hunter related that Payne's general reputation among his peers was that of a strong disciplinarian and a good teacher. He had not heard any bad reports about Payne's performance as a teacher. Hunter knew nothing about any association Payne may have had with drugs. He heard no complaints from parents or teachers concerning that matter. He was aware of the newspaper articles on Payne's arrest.

On cross-examination, Hunter noted that the articles produced a lot of discussion among teachers at the school. There was also some conversation about them among students. Hunter related that some teachers and students objected to Payne's removal from the school.

Freddie McGee, another of Payne's fellow teachers, stated that Payne had a good reputation among teachers, students, and parents. McGee knew of no involvement of Payne with drugs, nor of any students being influenced with drugs by Payne. The newspaper articles were the subject of general discussion among students and teachers. McGee agreed that information that a teacher was in possession of illegal substances would have a detrimental effect on the school system.

Jack Mitchell, a district superintendent for the Board, knew of no reports outside of the newspaper articles which connected Payne to drugs. The articles generated a lot of discussion among staff personnel at his office. He noted some parents were distressed that Payne was removed from his position at the school.

Payne testified on his own behalf. At the time of the hearing, he was in his 13th year as a teacher. Prior to that, he had been a fingerprint

technician with the Chicago Police Department. At the school, Payne had a reputation as a disciplinarian. He was assigned the "problem kids," that is, children who were involved with gangs or were otherwise in trouble with authority. Payne presented himself to the students as a father or big brother. His relationship with the parents was very good.

Payne discussed the circumstances of his 1976 arrest. He was stopped by Officer Skol. After his driver's license was produced, Skol searched his car. In the back seat, Payne carried a drug abuse kit which he had been using for instruction in school. From the kit, Skol took a plastic bag, accused Payne of possessing marijuana, and arrested him. Payne went to court and pleaded guilty in return for a sentence of probation because the judge told him that upon completion of the probation term there would be no conviction on his record. Payne's retained attorney was not present at the time he pleaded guilty.

Payne also stated that Sergeant Boyd arrested him in 1978. Payne denied that he possessed marijuana or cocaine at that time.[2]

The hearing officer eventually ruled that the Board did not sustain its burden of proof with respect to the specifications concerning the 1978 arrest (a finding of factual insufficiency in the Board's case). He further ruled that although Payne had pleaded guilty to the 1976 possession of marijuana charge, there was no evidence to show how this conviction had any effect upon Payne's duties as a teacher, upon the students, or upon his fellow teachers (a finding of legal insufficiency in the Board's case). The officer finally ruled that the 1976 occurrence was "not irremediable in and of itself." Consequently, he held Payne's dismissal improper.

The Board appealed this decision to the circuit court. The parties presented arguments, after which the court made the following oral findings:

"I find the decision of the hearing officer is contrary to the manifest weight of the evidence. In the Court's opinion, the sole conviction on the '76 offense of possession of marijuana is ample justification for discharging an otherwise qualified teacher. The evidence is clear that the students and the particular school are well aware of what had transpired, and in the Court's opinion, has an adverse impact on the operation of the school system and his ability to teach and relate with the students. * * * I can't in good conscience * * * say that a teacher who has been arrested with possession of marijuana is a fit teacher to teach the children of our community."

---

[2] Payne also presented the testimony of Rosemary Lear as part of his case. We do not find her testimony to be relevant to our disposition of the appeal and therefore do not recite it here.

## I

Payne's argument on appeal essentially is that the circuit court erred in ordering his dismissal based upon its finding that the hearing officer's decision was against the manifest weight of the evidence and was contrary to law. Examination of the court's just-recited oral findings supporting its decision shows that the activities of Payne in February 1976 served as the sole basis for its approval of his dismissal by the Board. Thus, we focus upon the evidence regarding that occurrence.

### A.

We first note that there is no real factual dispute in this case regarding the 1976 possession of marijuana charge against Payne. He admitted his guilt of this crime in court by pleading guilty, and he received a sentence of probation therefor. On appeal, Payne's attorney attempted to lessen the impact of that guilty plea by arguing, in what amounts to a collateral attack on the judgment, that Payne was not represented by an attorney at the time of the plea, and that Payne had only entered the plea in order to receive the sentence of probation.

■■ We reject this reasoning. There is no question in our minds that Payne did in fact plead guilty to the 1976 possession charge or that he made this plea of his free will. Therefore, we have no alternative but to find that the Board has proved by a preponderance of the evidence, as was required (see *Board of Education v. Adelman* (1981), 97 Ill. App. 3d 530, 532, 423 N.E.2d 254), that Payne did indeed possess a small quantity of marijuana in February 1976. It remains for our determination whether this fact alone constitutes a sufficient basis for Payne's dismissal by the Board.[3]

### B.

■■ No tenured school teacher may be removed from employment except for cause. (Ill. Rev. Stat. 1977, ch. 122, par. 34—85.) The School Code is generally vague as to what constitutes cause for removal, although it does provide that the Board may dismiss a teacher for "incompetency, cruelty, negligence, immorality *or other sufficient cause and * * * whenever, in its opinion, the interests of the schools require it * * *.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 122, par. 10—22.4.) The right to determine what constitutes sufficient cause lies in the first instance with

---

[3] Payne also argues that section 34—84b of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 34—84b) precluded the Board from relying on the 1976 guilty plea in seeking his dismissal, since Payne received only probation for that offense. Section 34—84b lists specific grounds, involving sex or narcotics offenses, for which the Board may *immediately* suspend a teacher. An exception to this power is entry of a sentence of probation for a narcotics offense. Clearly, this provision was intended to be a "sword" for the Board rather than a "shield" for a teacher. Nothing in the exception to this "sword" limits the Board's power to follow the standard dismissal procedures based upon acts which might also come within the ambit of this provision. Payne's contrary argument is unconvincing.

the Board, with the best interests of the schools as the "guiding star." (See *Morelli v. Board of Education* (1976), 42 Ill. App. 3d 722, 729, 356 N.E.2d 438; *McLain v. Board of Education* (1962), 36 Ill. App. 2d 143, 147, 183 N.E.2d 7; *Robinson v. Community Unit School District No. 7* (1962), 35 Ill. App. 2d 325, 330-31, 182 N.E.2d 770.) "Cause" has been described as some substantial shortcoming which renders continuance in employment in some way detrimental to discipline and effectiveness of service; something which the law and sound public opinion recognizes as a good reason for the individual to no longer occupy his position. (*Jepsen v. Board of Education* (1958), 19 Ill. App. 2d 204, 207, 153 N.E.2d 417, *appeal denied* (1959), 15 Ill. 2d 613.) There must be present a logical nexus between the actions alleged as cause for dismissal and the individual's fitness to perform as a teacher. See *Board of Trustees v. Judge* (1975), 50 Cal. App. 3d 920, 123 Cal. Rptr. 830.

■■ We have found no Illinois cases addressing the question of whether a teacher's possession of a small quantity of marijuana outside of the school environment is sufficient cause to warrant his dismissal. Thus, we are faced with a question of first impression. We note that the California courts have established a test to facilitate the determination of whether a logical nexus exists between a teacher's alleged activity and his fitness to teach. In *Morrison v. State Board of Education* (1969), 1 Cal. 3d 214, 229, 461 P.2d 375, 386, 82 Cal. Rptr. 175, 186, the California Supreme Court set forth the following list of factors to be weighed in making this decision: (1) the likelihood of an adverse effect from the conduct upon students and other teachers, (2) the degree of adverse effect expected, (3) the type of teaching certificate held by the teacher, (4) the probability that the conduct will recur, (5) the proximity in time of the conduct to the commencement of dismissal proceedings, and (6) the presence or absence of any factors in mitigation.[4] We will apply these factors to the evidence of this case to assist us in deciding whether Payne's 1976 conduct constitutes cause for his dismissal.

There is evidence in this case that a teacher's possession of even a small quantity of marijuana would, once it became a matter of general knowledge, have a major adverse impact upon that teacher's students and fellow teachers. Dr. Nina Jones, who qualified as an expert by virtue of her 30 years service to the Board, testified to the Board's perception of the role of a teacher in the Chicago school system. Dr. Jones stated that a teacher serves as the leader of the instructional program in his classroom, as a role model for his students who often emulate his behavior, and as a

---

[4] *Morrison* also suggests that examination should be made of the individual's motives in engaging in the conduct and of the impact a dismissal would have upon the person's constitutional rights. We do not find it beneficial to discuss these factors in light of the circumstances of this case.

person who instills basic values of American society and good citizenship in his students. Dr. Jones further stated that publication of information that a teacher engaged in illegal conduct would have a deleterious effect on the school system as a whole, as well as on the particular school.

We are aware of the special position occupied by a teacher in our society. As a consequence of that elevated stature, a teacher's actions are subject to much greater scrutiny than that given to the activities of the average person. We do not doubt that knowledge of a teacher's involvement in illegalities such as possession of marijuana would have a major deleterious effect upon the school system and would greatly impede that individual's ability to adequately fulfill his role as perceived by the Board. This conclusion is especially true where, as here, the teacher holds a certificate to educate children ages 10 to 13 who are, according to testimony in this case, very impressionable. We can only find that general awareness of possession of marijuana by a teacher in Payne's position directly and adversely affects that individual's ability to effectively perform as a teacher.

As well, the record shows that Payne's conduct in 1976 was not an isolated occurrence. There is evidence that Payne also possessed marijuana as well as cocaine in January 1978. While we do not focus upon that incident in resolving this appeal, we find that it does demonstrate the likelihood that Payne's illegal actions could recur.

Additionally, we note that the Board commenced informal proceedings against Payne upon the newspapers' publication of the fact of Payne's 1976 conduct in January 1978. Consequently, we do not find any attenuation of the impact of that action by the mere passage of a nearly two-year period between the initial occurrence and the general awareness of that incident. Further, we find an aggravating circumstance in this case which gives weight to the Board's position. Payne testified that he was assigned to the "problem kids," those children who have already shown a degree of disrespect for authority. It is beyond argument that Payne's involvement with illegal drugs would hinder the ability of the schools to enlighten these children as to proper behavior in our society.[5]

■■ In sum, we believe that a clear nexus has been shown in this record between Payne's conduct and his fitness to teach. We must conclude that Payne's possession of marijuana, coupled with the circumstances in which he functioned, constitutes sufficient cause for the Board to remove Payne from his position as a teacher. We cannot accept Payne's contention that his conduct was not unbecoming his status and position.

---

[5] We do note that the record shows in mitigation that several witnesses considered Payne a disciplinarian and a good teacher. This factor does not, in our opinion, outweigh the negative evidence concerning the impact of Payne's conduct upon his capacity to effectively function as a teacher.

## C.

Despite this conclusion, it remains necessary to determine whether the Board has also demonstrated that Payne's conduct was irremediable before this court may affirm the circuit court's decision. Payne asserts that the Board has not made this showing, and that the Board's failure to give him the statutorily required warning rendered the circuit court's decision erroneous regardless of the validity of the Board's determination that there existed cause for Payne's dismissal.

■■ Where conduct which forms the basis of charges seeking dismissal is deemed remediable, the Board must give the teacher a written warning which informs him of the consequences of failing to take corrective measures. (Ill. Rev. Stat. 1977, ch. 122, par. 34—85.) Where no warning is given, the Board's evidence must prove that the teacher's conduct is irremediable. If the Board fails to meet this evidentiary burden, it is deprived of jurisdiction to terminate a teacher's employment. (*Morris v. Board of Education* (1981), 96 Ill. App. 3d 405, 411-13, 421 N.E.2d 387.) The question of remediability is for the Board in the first instance, and its decision will not be disturbed absent a showing that it is arbitrary and capricious. (*Morris.*) Conduct is irremediable where damage results therefrom which could not have been corrected regardless of whether the teacher received an adequate timely warning. *Morris; McCutcheon v. Board of Education* (1981), 94 Ill. App. 3d 993, 998, 419 N.E.2d 451.

■■ Application of simple logic to the facts of this case shows that Payne's possession of marijuana in 1976 was irremediable conduct. The damage to the students, faculty, and school which flowed from that incident and which constituted cause for dismissal occurred immediately upon revelation of it. A warning to Payne could not have remedied this damage or in any way served to lessen its impact. Thus, the case is distinguishable from those cited by Payne, such as *Allione v. Board of Education* (1961), 29 Ill. App. 2d 261, 173 N.E.2d 13, where the charges involved conduct such as tardiness for work, lack of discipline of students, and the like.[6] Here, no warning was required by the Board. Payne's conduct in 1976 was clearly irremediable. The hearing officer erred in finding to the contrary.

For these reasons, we find that the circuit court correctly reversed the hearing officer's decision and ordered Payne's dismissal based upon his 1976 possession of marijuana. Consequently, it is unnecessary for us to address the Board's remaining specifications against Payne which involved the 1978 drug charges, or the parties' arguments in relation thereto.

---

[6] We note that the central case relied upon by Payne in making this argument, *Gilliland v. Board of Education* (1976), 35 Ill. App. 3d 861, 343 N.E.2d 704, was reversed by the supreme court, which held exactly the opposite of Payne's present position. 67 Ill. 2d 143, 365 N.E.2d 322.

.The judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN, P. J., and STAMOS, J., concur.