KENT W. MORRIS, Plaintiff-Appellee, v. ILLINOIS STATE BOARD OF
EDUCATION *et al.*, Defendants-Appellants.

Third District   No. 3—89—0451

Opinion filed May 10, 1990.—Rehearing denied June 29, 1990.

52

Neil F. Hartigan, Attorney General, of Springfield, and Harry A. Blackburn, of Chicago (Robert J. Ruiz, Solicitor General, and Karen Michels Caille, Assistant Attorney General, of Chicago, of counsel), for appellant Il-

linois State Board of Education.

John M. Izzo, of Scariano, Kula, Ellch & Himes, of Chicago Heights (David P. Kula, of counsel), for appellant Board of Education, Mazon-Verona-Kinsman Community District No. 2.

Illinois Educational Association, of Chicago (Betty Thielemann, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Plaintiff, Kent Morris (Morris), was a teacher for nine years in the defendant Mazon-Verona-Kinsman Community District No. 2 school system (district). The district discharged Morris on March 26, 1988. Pursuant to section 24—12 of the School Code (Ill. Rev. Stat. 1987, ch. 122, par. 24—12), a hearing was held to determine whether irremediable cause existed for the discharge. The hearing officer concluded that irremediable cause was present. On administrative review, the circuit court reversed. We affirm the circuit court's decision.

The record reveals that in the summer of 1979, Morris applied for a science position with the district. Morris was interviewed by the district superintendent and high school principal and was offered the position. Morris, a quality control supervisor at a local factory at the time, declined the offer because the salary was too low. Shortly thereafter, the district asked Morris whether he would be interested in a teaching vacancy in the agriculture department. Morris was interested. Morris was again interviewed, and this time he accepted the district's offer because the salary was competitive. In July 1979, Mr. William Lynch, the then district superintendent, submitted a written request with the Illinois State Board of Education (ISBE) requesting "possible temporary approval for a young man to teach agriculture in our high school." The request was followed by a letter from James Johnson (Johnson) of the ISBE indicating that Morris was "qualified to teach the Applied Biological and Agricultural area of the Reimbursable Vocational Education Program at the district and that he would suggest that Morris be urged to complete additional coursework in agriculture." Morris was hired.

In order to teach general agriculture, a teacher must have taken 24 semester hours of coursework in the field of agriculture. These requirements have not changed since 1979. However, Reimbursable Vocational Agriculture (RVA), a course taught only to high school juniors and seniors, had different requirements in 1979. At that time, teaching RVA required 2,000 hours of outside educational working experi-

ence in the area of agriculture. Subsequently, in 1983-1984, the ISBE promulgated new rules effectively incorporating the 24-hour coursework requirement for general agriculture teachers to RVA teachers. As a result, Morris did not have the necessary course credits to teach RVA.

With respect to Morris' qualifications, Johnson's 1979 letter indicated that Morris was then qualified to teach RVA but would require additional coursework to teach general agriculture. Nevertheless, the district assigned Morris to a teaching position for which he was not qualified. High school principal, now superintendent, Bill Murray (Murray) stated that he never explained to Morris the difference in coursework requirements between RVA and general agriculture because, as Murray himself admitted, Murray didn't know the difference. More importantly, despite the ISBE's suggestion that Morris be urged to complete additional coursework, Morris was not notified that he needed the additional coursework. Morris did, however, enroll in an agriculture teaching course at the University of Illinois shortly after he began teaching for the district.

In the spring of 1988, nine years after hiring Morris, Murray recommended to the district that the agriculture department be eliminated. The district rejected Murray's recommendation and directed him to seek an alternative plan. While studying such alternatives, Murray contacted the ISBE inquiring whether he could combine the agriculture and biology departments. In addition, Murray checked on the qualifications of the school's biology teacher in order to determine if he could teach agriculture. The ISBE informed Murray that the biology teacher did not qualify to teach agriculture classes. Murray, at that point realizing that Morris and the biology teacher had similar educational and experiential backgrounds, believed that Morris also could not teach agriculture. Murray then inquired into Morris' qualifications. The ISBE confirmed Murray's intuition that Morris was not qualified to teach agriculture. Morris remains qualified to teach other subjects.

On March 26, 1988, the district dismissed Morris for cause claiming irremediable deficiencies for failing to possess the necessary qualifications to teach. The district deemed the following causes irremediable:

    (1) "failure to meet the college semester hour requirements mandated by the ISBE for teachers assigned to departmentalized courses," and

    (2) "failure to possess the mandated legal requirements to hold your current teaching position or any other existing or

contemplated teaching position in the School District."

On July 12, 1988, a hearing was held regarding the district's charges against Morris. The hearing officer concluded that the district had sufficient cause to dismiss Morris and that said cause was irremediable. Morris then filed a complaint seeking judicial review of the decision. The circuit court of Grundy County reversed the hearing officer's decision. The district brings the instant appeal. Pursuant to Supreme Court Rule 303(a)(3) (107 Ill. 2d R. 303(a)(3)), the ISBE joined the instant appeal.

The district first argues that remediability is irrelevant because Morris is legally unqualified to teach. The district cites two cases in support of its argument. (*Brubaker v. Community Unit School District No. 16* (1977), 46 Ill. App. 3d 588, 360 N.E.2d 1228; *Riley v. School District 124* (1966), 75 Ill. App. 2d 35, 221 N.E.2d 424.) After reviewing these cases, however, we find them both of little help to the district. In both cases, the teachers allowed their teaching certificates to lapse. The courts held that the teachers' failure to maintain their teaching certificates left them legally unqualified to teach. Here, in contrast, there is no question as to Morris' certification as a teacher in Illinois.

Moreover, as part of its "remediability is irrelevant" argument, the district engages in a semantic exercise arguing that Morris' lack of semester hours was a "reason" for his dismissal and not a "cause" as defined by the School Code.

The relevant sections of the School Code provide in pertinent part as follows:

> "§10—22.4. Dismissal of teachers. To dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause, *** and to dismiss any teacher whenever, in its opinion, he is not qualified to teach ***." Ill. Rev. Stat. 1987, ch. 122, par. 10—22.4.

> "§24—12. Removal or dismissal of teachers in contractual continued service. ***

> If a dismissal or removal is sought for any other reason or cause, including those under Section 10—22.4, the board must approve a motion containing specific charges ***. ***

> Before setting a hearing on charges stemming from causes that are considered remediable, a board must give the teacher reasonable warning." Ill. Rev. Stat. 1987, ch. 122, par. 24—12.

The district asserts that the words "cause" and "reason" in section 24—12 have different meanings. If a teacher is dismissed for cause, the district proposes, remediability and notice are at issue.

When a teacher is dismissed for a reason, however, remediability and notice are not at issue. It is the district's contention that Morris may be dismissed without regard to remediability because his coursework deficiency is, in its opinion, the "reason" for his dismissal. The district asserts, therefore, that because Morris was dismissed for a "reason," notice was not necessary. We find this creative interpretation meritless.

■■ We believe the district's attempt to carve out an exception to the remediable principle by citing a few rules of statutory construction is not supported by the statutory language contained within the statutes nor has any case interpreted these statutes in this manner. After reviewing the pertinent statutes, it appears the legislature meant "reason" and "cause" to be interchangeable in section 24–12. Notwithstanding this, the record reveals that the district left no doubt in its notice of dismissal and in its arguments before the hearing officer and circuit court that Morris was dismissed for cause and not for a "reason."

■■ The district next contends that the cause of Morris' dismissal was irremediable. The test for determining whether conduct is remediable as established in *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622* (1977), 67 Ill. 2d 143, 365 N.E.2d 322, is (1) whether damage has been done to the students, faculty or school, and (2) whether the conduct resulting in that damage could have been corrected had the teacher been warned.

In *Gilliland*, the teacher was dismissed by the board of education for incompetency, cruelty, and negligence. In applying its facts to the two-prong remediability test, the court there found that the record contained considerable evidence of damage to the students in satisfaction of the first prong. With respect to the second prong, there is minimal discussion except reference to the fact that the teacher's complained-of conduct had extended over a period of four years, despite complaints by students and parents. The court concluded that the combination of causes plus the continuous nature of the conduct were a sufficient basis for a finding of irremediability. *Gilliland* (1977), 67 Ill. 2d 143, 365 N.E.2d 322.

In the instant case, contrary to the district's assertion, the record contains no testimony as to damage done to the students, faculty, or school by Morris' teaching. The only damage argument posed by the district was that the district might possibly lose State funds for employing an unqualified teacher. The district argues that now that the ISBE has been made aware that Morris lacks qualifications for his teaching position, his continued employment jeopardizes the district's

future receipt of State funds. However, a finding of damage based on an inference or presumption that damage might occur in the future does not satisfy the damage requirement in *Gilliland.*

■ The circuit court correctly rejected the district's presumed damage argument. The first prong of the *Gilliland* test is whether any damage has been done, not whether damage might occur in the future. This court in *Swayne v. Board of Education of Rock Island School District No. 41* (1986), 144 Ill. App. 3d 217, 221, 494 N.E.2d 906, 909, noted that when dealing with a necessarily vague standard such as the *Gilliland* test, a court of review is inevitably drawn to comparisons with prior cases in order to place the facts before it on some sort of continuum. After reviewing and comparing the prior cases, we find that those cases applying the *Gilliland* test all concerned damage already done and not damage that may be presumed or inferred. Here, the district did not demonstrate that Morris' coursework deficiency damaged the students, faculty, or school as *Gilliland* requires.

■ With respect to the second prong of the *Gilliland* test, whether the conduct resulting in the damage could have been corrected had the defendant's superiors warned him, the district did not give Morris notice to remedy his coursework deficiency. The record reveals that Murray did not take any action to notify, require, insist, or in any other way impress upon Morris that additional coursework was required. Murray testified that although he mentioned to Morris nine years ago that he should take additional classes, Murray recalled no subsequent attempts to direct Morris to take additional classes. Indeed, Murray did not know additional coursework was required for Morris' teaching position until March of 1988.

■ It is well settled that where conduct which forms the basis of charges seeking dismissal is deemed remediable, as here, the district must give the teacher a written warning which informs him of the consequences of failing to take corrective measures. (*Board of Education of School District No. 131 v. State Board of Education* (1983), 99 Ill. 2d 111, 457 N.E.2d 435.) Where no warning is given, the board's evidence must prove that the teacher's conduct is irremediable. (*McBroom v. Board of Education of District No. 205* (1986), 144 Ill. App. 3d 463, 494 N.E.2d 1191.) If the board fails to meet this evidentiary burden, it is deprived of the authority to terminate a teacher's employment. (*Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 430 N.E.2d 310.) Therefore, because we find the cause for Morris' dismissal remediable, we must determine if Morris was given adequate notice of his deficiency such that he could have taken

corrective measures. The record reveals that Morris was not given proper notice of his coursework deficiency.

The record does not indicate that Morris was ever notified by the district of his coursework deficiency until the district's dismissal action some nine years after his hiring. The record does contain evidence, however, of Morris' intent to take whatever courses were required. The then Superintendent Lynch sent a letter to the ISBE stating that Morris was "willing to take any courses needed to fully qualify him for the position." Morris also enrolled in and completed an agriculture teaching course at the University of Illinois. Subsequently, notice was not sent by the district to Morris indicating that he was deficient in agriculture courses and that if he didn't take additional courses he would be dismissed. As a result, Morris taught for nine years believing he was qualified. More importantly, it is readily apparent from the record that had Morris been told years ago that he needed to take additional courses, he could have completed those courses long ago and would be qualified today for the position to which he was assigned.

We conclude that Morris' lack of coursework was remediable. The hearing officer stated that Morris could remedy his coursework deficiency by taking 32 hours of courses and the district stated, before the circuit court, that the lack of coursework was remediable. Therefore, contrary to the district's assertion that Morris' lack of coursework is not correctable, we agree with the circuit court's finding that the acquisition of coursework is among the most remediable of deficiencies.

■ Where a remediable cause exists and notice is not given, the board's failure to give such warning deprives a board of the authority to discharge the teacher for those causes. (*Paprocki v. Board of Education of McHenry Community High School District No. 156* (1975), 31 Ill. App. 3d 112, 114, 343 N.E.2d 841, 844.) We hold, therefore, that because Morris was not notified of his coursework deficiency, the district improperly dismissed him.

■ We next consider the district's assertion that even if this court finds Morris' coursework deficiency to be remediable, this remediable cause became irremediable after such an extended period of time, nine years, had elapsed. Again, we find the district's reliance on the cases it cites inapposite. In each case, the school board or other superiors of the dismissed teacher continually pointed out the dismissed teacher's improper conduct. (*Gilliland* (1977), 67 Ill. 2d 143, 365 N.E.2d 322 (despite attempts by the teacher's superiors to have her correct that conduct); *McCutcheon v. Board of Education* (1981),

94 Ill. App. 3d 993, 419 N.E.2d 451) (despite attempts by the school administration to persuade her to follow established procedures and policy); *Glover v. Board of Education of Macon Community Unit School District No. 5* (1974), 21 Ill. App. 3d 1053, 316 N.E.2d 534 (even though he had been counseled and reprimanded by his superintendent and.principal).) Here, in contrast, Morris received no warning that the district assigned him to teach a course for which his credentials were deficient. Morris first received notice of his coursework deficiency on the date of his dismissal. In the cases cited by the district, the repeated warnings and reprimands by the teachers' superiors were deemed to have created irremediable causes.

The district next asserts that it has no obligation to undergo an alteration of its program in order to accommodate Morris and that Morris' dismissal doesn't require a finding of subjective fault. The district poses the question "What could we do?" The district argues that Morris "didn't even bother to look at the ISBE rules." With this argument, it appears the district wishes to place the burden of knowing what a teacher may or may not teach solely on the teacher. A similar argument was presented to this court in *Ballard v. Board of Education of Rock Island School District No. 41* (1986), 141 Ill. App. 3d 24, 489 N.E.2d 896. There, this court held that the defendant district was charged with the responsibility of knowing the qualifications of its teachers. This court noted that such information is under the district's control and is not readily available to the public. (*Ballard*, 141 Ill. App. 3d at 27, 489 N.E.2d at 898.) Here, it appears from the record that it was the district who should have looked at the ISBE rules. The district possessed a letter from the ISBE indicating what Morris was qualified to teach. Instead of carefully reading the ISBE's letter, however, the district misassigned Morris.

■ We note that what is relevant in this proceeding is whether the teacher's lack of qualifications is remediable, not what the district could or should have done when it discovered the error it made in misassigning Morris. The circuit court correctly determined that the issue of the district possibly losing State funds if Morris is reinstated and whether a finding of subjective fault is required is "not before us." The instant case concerns a teacher dismissed for cause. What this court must determine is whether the procedures outlined in section 24—12 of the School Code were followed and not what the district will do when the teacher is reinstated. Accordingly, because we find the district did not have the authority to dismiss Morris, the issue of what to do with Morris when he is reinstated is not before this court.

Moreover, we question the district's reliance on *Fadler v. State Board of Education* (1987), 153 Ill. App. 3d 1024, 506 N.E.2d 640, *Chicago Board of Education v. Payne* (1981), 102 Ill. App. 3d 741, 430 N.E.2d 310, and *Board of Education of Argo-Summit School District No. 104 v. State Board of Education* (1985), 138 Ill. App. 3d 947, 478 N.E.2d 24, for its ancillary argument that Morris' conduct is somehow immoral and violates a public trust. Those cases involved two teachers caught fondling students and a teacher caught possessing marijuana. The district, somewhat audaciously, accuses Morris of immoral conduct and of violating the public trust for teaching a course for which he was not qualified. We reject the district's argument and believe that analogizing the cited cases with the facts presented herein is not only meritless but unfair to Morris.

■ The district next raises an ancillary insubordination charge, for the first time, on appeal. We need not address this argument for where, as here, the record fails to show that a matter urged on appeal was decided by the circuit court, the issue is not properly preserved, and an argument presented for the first time on appeal is deemed waived. *Sherman v. Board of Fire & Police Commissioners* (1982), 111 Ill. App. 3d 1001, 445 N.E.2d 1.

■ The focus of the instant case centers on the question whether Morris' coursework deficiency is remediable. We, like the circuit court, believe that it is. Morris has taught a course, for which he was not qualified, for nine years. The district, not surprisingly, never checked up on Morris' qualifications to teach that course for no complaints regarding Morris' competency to teach were ever lodged by students, parents, or fellow faculty members. More importantly, Morris has expressed from the beginning a willingness to take the necessary courses in order to become qualified. We conclude, therefore, that because the district failed to notify Morris of his coursework deficiency, thereby depriving Morris of the opportunity to take corrective measures, the district was without the authority to dismiss Morris. For these reasons, Morris should be given a reasonable amount of time to expeditiously remedy his coursework deficiency.

In short, we find the hearing officer's conclusion that Morris' coursework deficiency was irremediable to be against the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Grundy County is affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.