**BOARD OF DIRECTORS OF THE LAW-TON–BRONSON COMMUNITY SCHOOL DISTRICT, Appellant,**

v.

**Kathleen DAVIES, Appellee.**

**No. 91–1198.**

Supreme Court of Iowa.

July 22, 1992.

Rehearing Denied Sept. 25, 1992.

Brian L. Gruhn and Alan L. Uetz of Gruhn Law Firm, Cedar Rapids, for appellant.

MacDonald Smith of Smith & Smith, Sioux City, for appellee.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This is a school teacher termination case under section 279.27 of the Iowa Code (1989). The appellant, Lawton–Bronson Community School District, made findings of just cause to discharge appellee, Kathleen Davies, during the contract year. She appealed to an adjudicator who disagreed with the board on the discharge and directed further consideration by the board after receiving additional medical evidence regarding her fitness to perform as a teacher. The board appealed to the district court, which affirmed the decision of the adjudicator. Upon further appeal to this court, we now reverse and remand.

Kathleen Davies was employed by the Lawton–Bronson Community School Dis-

trict as an elementary teacher. On November 17, 1989, Davies was arrested for shoplifting at a Younker's Department Store in Sioux City, Iowa. A formal charge of third-degree theft was filed against her on December 20, 1989.

On January 22, 1990, the district's superintendent of schools issued to Davies a notice and recommendation to terminate her employment contract pursuant to Iowa Code section 279.27 (1989). The notice gave grounds for termination of her teacher's contract as follows:

On or about the seventeenth day of November, 1989, you did, at Sioux City, Iowa, wrongfully take property belonging to Younker's for which you were charged with third-degree theft. The incident has become public knowledge in the community and adversely impacts on your effectiveness as a teacher. Further, your actions were part of a course of similar conduct which do not reflect the role model necessary to be an effective elementary teacher in that you admitted to a Younker's employee to taking items of clothing on other occasions prior to November 17, 1989.

Hearing ensued before the board of directors of the district on May 30–31, 1990, in Lawton, Iowa. Following proceedings by the adjudicator, the trial court upon appeal issued its ruling on July 10, 1991.

Davies taught fourth grade children at the Lawton–Bronson Community School located in Lawton, Iowa, during the 1989–90 school year. She had been a school teacher at that school for several years. Davies was under the surveillance of Younker's employees for possible shoplifting during the summer and fall months of 1989 at the Younker's stores in Sioux City, Iowa. She was placed on a watch list at a Younker's store on November 16, 1989, and was arrested for shoplifting on November 17, 1989.

Throughout these proceedings Davies has contended that any unlawful activity in which she was engaged was the result of a medically induced mania. On this issue, her treating psychiatrist testified, a deposition of an examining psychiatrist was introduced, and a nonphysician expert witness was presented by the superintendent.

Davies claims that her compulsion to engage in shoplifting activity is the result of a mental illness/disability and, therefore, such conduct does not rise to the level of just cause for termination of her employment. The board of directors of the school district maintains that the acts of shoplifting and other incidents at the school are undisputed and have detrimentally affected her ability to be a role model to the students. Consequently, the board asserts that her conduct satisfies the legal requirements to justify a termination of her employment.

At the hearing, the board established without contradiction that Davies in fact engaged in shoplifting on November 17, 1989, at a Younker's department store in Sioux City, Iowa. The superintendent of schools for the Lawton–Bronson Community School District presented evidence by the loss-prevention manager at Younker's. She testified that Davies was under suspicion for continuous shoplifting incidents during the summer of 1989. She indicated that the Younker's employees were suspicious of Davies because she had returned merchandise without a receipt on many occasions. She further testified that no action was taken at any time prior to Davies' arrest because Younker's had a policy that required a loss-prevention department employee to make the stop of a person suspected of shoplifting.

On November 16, an employee of Younker's who was not in the loss-prevention department believed that she had witnessed a theft. Davies was observed the next day in a different department store in the Sioux City area and again created suspicion by leaving a pair of Guess jeans from the store in the women's restroom. The Younker's employee stated that she was waiting for the arrival of Davies at the Younker's store in the mall where she worked on November 17 because an employee at the downtown Younker's store who had found the jeans called her to notify her of a possible theft attempt. When Davies arrived at the Younker's store in

the mall, she was under constant surveillance. She was observed taking clothing into the fitting room by the Younker's employee who subsequently noticed that two pieces were missing when Davies emerged from the room. The employee waited to confront Davies until Davies bought two sweaters and exited the store. Two employees then confronted Davies in her car outside of the Younker's store and requested that she come with them into the loss-prevention office. Davies voluntarily agreed to go with them. At the office Davies then returned two pieces of merchandise that had been stolen. Davies had taken these pieces of merchandise by wearing them underneath her usual clothing.

Davies admitted to the Younker's employees that she had stolen merchandise from Younker's on several other occasions. While Davies refused to make a statement to the Younker's employees concerning this particular event, she did sign a separate form in her own handwriting admitting that she stole twenty pieces of Liz Claiborne clothing from the Younker's store. At the hearing before the board, Davies acknowledged that the handwriting on the form was hers and that the signature on the form was in her handwriting. Davies also admitted that she had taken merchandise the night previous to her arrest. The Younker's employee further testified that Davies was coherent and did not exhibit any unusual behavior during the confrontation over the stolen items. Davies admitted that she was able to give the correct information regarding her name, address, and age to the Younker's employees.

Davies explains her behavior by stating that she was in a manic state due to a chemical imbalance from taking Lithium and Marplan. Her position is that the mania caused her to shoplift and also prevents her from remembering much of anything regarding the shoplifting incidents. She asserts a total and complete memory loss of the shoplifting acts on the dates in question as a result of her manic episode.

Davies presented Dr. Carl Fulton, a psychiatrist and her personal physician, who gave his opinion on the possible reasons for her shoplifting behavior. Dr. Fulton stated that the teacher was experiencing mania. He testified that the psychological state of mania caused the teacher to engage in thrill seeking and, therefore, she did not have the intent to steal on that particular day.

Dr. Fulton further stated that since switching the teacher's drug from Marplan to Parnate, she has become much better with regard to her mood swings. However, the doctor also stated that recurrence of the mania is possible and that Davies has never been free of depressive episodes for more than three to six months at a time. Further, Dr. Fulton stated that Davies had experienced periods of mania on two other occasions since he has been her doctor. He previously had switched the drug of choice on those two occasions because of the episodes of mania. Dr. Fulton stated further under cross-examination that while he was hopeful that the different strategies in the past would be successful, the strategies were in fact not effective.

The superintendent's expert witness, Dr. James Giordano, is a professor of neuroscience and neuropharmacology at Drake University. He is also director of the neurological pain center at Iowa Methodist Research Hospital and Medical Center. He testified that Davies would be aware that she was engaging in risk taking behavior even during the manic episode. She would have had a clear sense of right versus wrong and/or a clear sense of the legality of her actions.

Dr. Gerald Brooks, a psychiatrist, also examined Davies at the request of the board of directors of the school district. Dr. Brooks testified that in his professional opinion, it is likely that Davies had a medically induced manic episode on or about November 17, 1989.

The school superintendent also provided testimony by several teachers and one parent as to other incidences of Davies' behavior as a teacher. These incidences were: (a) statements to her fifth grade class that she carries a handgun, (b) statements to a student that she understood his pain relat-

ed to headaches and would like to fly out of a window, (c) students dictating the substance of classes, (d) laying her head on her desk due to headaches on several occasions, (e) taking several pills in front of students, and (f) making an improper reference to "Jesus Christ" during class.

The evidence showed the details of these actions by Davies. When a student complained to her about a recurring headache, Davies said that she understood his pain and sometimes felt like jumping out of a window when she had similar pain. The student's mother testified at the hearing that she felt that this was totally inappropriate behavior and not indicative of someone who is a good role model. Davies made comments to entire classes of fifth graders that she carried a handgun in her purse. The students made comments and had discussions that indicated they believed her statement. Her teacher peers testified they overheard students discussing this statement, and the teachers were of the opinion that this behavior did not establish Davies as a good role model.

Several parents expressed concern to the superintendent and other teachers about her ability to be an effective teacher. Five of Davies' colleagues, two of her principals, and the superintendent all testified that the shoplifting incident adversely impacted upon her ability to be an effective role model for fourth and fifth graders and would prevent her from being an effective teacher in the future.

On the issue of Davies being an appropriate role model, the board found that Davies was not a good role model prior to November 17 and, therefore, the knowledge by the district's patrons and students that she was involved in several cases of theft caused an irreversible situation whereby Davies could no longer be an effective teacher or role model. The board further found that fifth grade students would be negatively impacted by the knowledge of the thefts regardless of Davies' ability to be acquitted as a result of any diminished responsibility defense.

In its findings the board also found as follows:

The board does not find Davies' account of her theft, nor Fulton's explanation to be persuasive on the issue of how Davies' ability to be a role model has been affected. The superintendent's rebuttal witness, Dr. James Giordano, testified that a near complete memory loss does not occur in people who suffer a manic episode. He states that a person under mania may be confused as to the actual events or the order of the events, but the person clearly remembers some significant facts. The entire testimony of Davies lacks substantial credibility based on this fact that she claims memory loss over a period of several days and yet this response is not well-founded in medical fact. Giordano also states that regardless of the memory of the person, manic episodes do not confuse that person as to the rightfulness or legality of her acts. No testimony was offered by the teacher to disprove this expert testimony and therefore the board makes a finding that Davies knew of the rightfulness and legality of her acts of thievery, which occurred over several days and months.

Further findings by the board were:

The most damaging and irrefutable facts against Davies indicate that she cannot return to the Lawton–Bronson Community School District because her ability to be a role model is damaged beyond repair. One teacher testified on behalf of Davies and stated that she would be able to return to the district and be an effective teacher. However, the weight of the evidence presented at the hearing supported the fact that Davies was not a good role model prior to the theft and the theft incident caused Davies to totally lose her effectiveness as a teacher and role model. The board finds the following evidence supports the fact that Davies was not a good role model prior to November 17.

The board then recited the evidence of classroom improprieties and alarming statements as previously stated:

The board finds that inappropriate behavior as exhibited by Davies had a neg-

ative impact on her ability to be a proper role model. . . . The board is mindful of the fact that under the circumstances, the charge of third-degree theft as one isolated incident on November 17 may not, in and of itself, support a recommendation for termination. However, in conjunction with the one specific incident of theft on November 17 the board finds that: Davies ability to be a role model and an effective teacher were impaired prior to November 17; Davies engaged in a pattern of behavior that indicates a deeper problem than bad or improper medication in that she was involved in several acts of theft over several months; the district is small and the acts of Davies are common knowledge; Davies has a continual problem of admitting to any kind of improper, inappropriate, or illegal behavior despite substantial evidence to the contrary and, therefore, her own remediation is unlikely; unrefutted expert testimony indicates that Davies had full knowledge of the legality and rightfulness of her acts; Davies will not likely be able to fully control and stabilize her mental health; and, taking all of this into consideration, Davies' ability to be a role model and an effective teacher are impaired beyond repair due to the several acts of theft perpetrated by her.

■ Our scope of review of the district court's decision is governed by Iowa Code section 279.18 (1991), which states that appeals shall be taken as in other civil cases. Rule 4 of the Iowa Rules of Appellate Procedure states that an appeal is at law for the correction of errors. Our review of the district court is at law for the correction of errors under the seven standards set forth in section 279.18. *Board of Educ. v. Youel*, 282 N.W.2d 677, 679–80 (Iowa 1979). Our task is to "make anew the determinations of the district court specified in [section 279.18]." *Smith v. Board of Educ.*, 293 N.W.2d 221, 223 (Iowa 1980). In our review, we give weight to the findings of fact made by the board of directors of the school district but are not bound by them. Iowa Code § 279.18. We examine the evidence to determine if the decision of the board of directors of the school district has support in a preponderance of the evidence in the record as a whole. *Olds v. Board of Educ.*, 334 N.W.2d 765, 768 (Iowa App.1983).

■ The statute under which this case proceeded provides: "a teacher may be discharged at any time during the contract year for just cause." Iowa Code § 279.27 (1991). The term "just cause" includes legitimate reasons relating to teacher fault. In *Briggs v. Board of Directors*, 282 N.W.2d 740, 743 (Iowa 1979), we stated:

Probably no inflexible "just cause" definition we could devise would be adequate to measure the myriad of situations which may surface in future litigation. It is sufficient here to hold that in the context of teacher fault a "just cause" is one which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. It relates to job performance including leadership and role model effectiveness.

In applying the "just cause" criteria to this case, the adjudicator and the district court determined that our case of *Smith*, 293 N.W.2d at 221, required that the board be reversed. We thus have an issue both of interpretation and application of our case law, primarily as formulated by the *Smith* case.

In *Smith*, we reviewed the termination of a teacher employed as a counselor who was having difficulties fulfilling his official duties due to a preoccupation with personal problems. Smith was given an extended leave of absence and sought professional psychiatric help. After diagnosis and treatment for a paranoid condition, Smith's doctor testified he no longer suffered from the condition. The doctor further stated that he could not determine when Smith would be fully capable of returning to work but did say that he could try returning to his duties.

■ We recognized in *Smith* that just cause for termination of a teaching contract may be found as a result of mental or physical disability. 293 N.W.2d at 224 (cit-

ing *Fisher v. Church of St. Mary*, 497 P.2d 882, 884–85 (Wyo.1972)). Among the appropriate factors to be considered are "the nature and the extent of the duties required by the contract, the character and duration of the illness, the needs of the employer and the extent to which the duties can be performed by another." *Smith*, 293 N.W.2d at 224. Our review of the proceedings under which Smith's contract was terminated showed that these factors were not properly considered by the board. We held that a termination of a teaching contract for medical reasons under section 279.27 must involve an application of these criteria. The board cannot merely engage in an inquiry as to whether the symptoms of the malady are volitional acts. *Id.* at 225.

Later, in *Board of Directors v. Mroz*, 295 N.W.2d 447 (Iowa 1980), we applied the *Smith* analysis to another teacher termination case. Mroz was a teacher of junior high school science whose employment was terminated for incompetence as a teacher. We distinguished *Smith* on the facts because Mroz had failed to establish that his high blood pressure was symptomatic of a mental or physical disability that caused his incompetent performance as a teacher. *Id.* at 450. We noted that *Smith* involved uncontroverted expert testimony that the teacher's incompetence was due to a physical or mental disability. When a teacher's incompetence is not due to a physical or mental disability, the board does not have to consider the criteria established in *Smith*.

In the case at bar, Davies urges that the *Smith* paradigm must be applied here because her dismissal involves a mental disability. She claims that the issue regarding her mental state is uncontroverted and is supported by expert medical testimony. *Smith* recognized that cases involving health problems must be treated differently from those involving personal fault. To fire her for personal fault, Davies says, is basically unfair, arbitrary, and unreasonable since she cannot control the fact she is ill.

Davies argues, on the law, that *Smith* makes no distinction among a teacher's effectiveness, competence, and role modeling and therefore applies to this case. Role modeling comprises a part of a teacher's effectiveness and competence. Further, even if a separation of these attributes is possible, she should have a chance to rehabilitate and redeem her credibility as a role model, the same as competency could be restored, as contemplated in *Smith*.

The board views *Smith* as limited to those cases involving uncontroverted evidence of a physical or mental disability as a cause of the problem in performing teaching responsibilities. It also separates the question of competent teaching skills, applying *Smith* to those problems, from role modeling that the board asserts is distinct and not embraced by *Smith*. The superintendent never contended, states the board, that Davies was incompetent as a teacher. The only issue is her status as a role model, which has been permanently impaired at the Lawton–Bronson school even if she were in perfect health. On the question of the applicable law, the board believes this case falls somewhere between the *Smith* and the *Mroz* cases.

It is extremely difficult in this case to compartmentalize those characteristics of Davies that may properly be considered in judging her role as a teacher. To consider the shoplifting incident as the crux of the matter and look for an explanation to Davies' adverse reaction to medication is an oversimplification of the problem facing the school board. Such an approach virtually ignores Davies' prior history of inappropriate conduct in the classroom, which bears not on her teaching skills but on the perception of her by students as someone to emulate.

There is much precedent for requiring a teacher to be a good role model. The United States Supreme Court in *Ambach v. Norwick*, 441 U.S. 68, 78–79, 99 S.Ct. 1589, 1595, 60 L.Ed.2d 49, 57–58 (1978), stated:

Within the public school system, teachers play a critical part in developing student's attitude toward government and understanding of the role of citizens in

our society.... Further, a teacher serves as a role model for his students exerting a subtle but important influence over their perception and values.

*Accord Beilan v. Board of Educ.*, 357 U.S. 399, 405, 78 S.Ct. 1317, 1321–22, 2 L.Ed.2d 1414, 1419 (1958).

The Illinois Appellate Court in *Chicago Board of Education v. Payne*, 102 Ill. App.3d 741, 58 Ill.Dec. 368, 430 N.E.2d 310 (1981), quoted an expert as saying:

> [A] teacher serves as the leader of the instructional program in his classroom, as a role model for his students who often emulate his behavior, and as a person who instills basic values of American society and good citizenship in his students.

*Id.* 58 Ill.Dec. at 373, 430 N.E.2d at 315. The particular issue of shoplifting has arisen in other jurisdictions. In *Leslie v. Oxford Area School District*, 54 Pa. Cmwlth. 120, 420 A.2d 764 (1980), the teacher asserted that her act of shoplifting was a result of temporary mental instability brought on by physical and emotional stresses. The Pennsylvania court found that the act of shoplifting is immoral and affects the teacher's ability to provide effective instruction. Regarding the teacher's claim of temporary mental instability, the court said: "The circumstances described are mitigating but they cannot 'eradicate the result or change the complexion of her acts.'" *Id.* 420 A.2d at 766 (citation omitted). Similarly, in *Kimble v. Worth County R–III Board of Education*, 669 S.W.2d 949 (Mo.Ct.App.1984), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 268 (1984), the teacher had on separate occasions taken school books, twenty dollars, a school prop, and other things. The Missouri Appellate Court stated:

> The taking of property belonging to another without consent ... breaches even the most relaxed standards of acceptable human behavior, particularly so with regard to those who occupy positions which bring them in close, daily contact with young persons of an impressionable age.

*Kimble* at 953. We have also noted in *Erb v. Iowa State Board of Public Instruction,*

216 N.W.2d 339, 343 (Iowa 1974), that "[a] teacher occupies a sensitive position. Since students are taught by example as well as lecture, the teacher's out-of-school conduct may affect his classroom fitness."

In its review of Davies' record as a teacher, the board specifically found that she was not a good role model for the students even prior to the shoplifting incident of November 17. It referred to her startling comments and bizarre conduct in the classroom, referenced in this opinion. This finding was followed by a finding that the knowledge by the district's patrons and students of her several cases of theft caused an irreversible situation whereby she could no longer be an effective teacher or role model.

Additionally, the board found that Davies' account of the theft and her doctor's explanation were not persuasive. Davies was found to lack credibility based on her claim of memory loss that did not fit with the medical testimony about the manic state. The board also found that Davies knew of the rightfulness and legality of her acts of shoplifting.

We have commented before that on questions of credibility in these matters the board may not be completely assured of the truth of the matter. *See Board of Directors v. Justmann*, 476 N.W.2d 335, 338 (Iowa 1991). It is nevertheless in the best position to judge. In addition to the credibility of Davies, the board faced some conflicting testimony among the medical witnesses as to whether her medication caused her shoplifting. The board chose to believe Dr. Giordano, who discounted her medicinal reaction as an overriding cause.

■ The need for a teacher to be a good example to the students is not denied by Davies in her argument. Rather, she views role modeling as part of a teacher's effectiveness and competence. On this, the board agrees and so do we. As it is artificial to separate these components of a teacher's abilities in making a factual determination of "just cause," so it is strained to interpret the legal requirements in that manner. In *Smith* we were reviewing the board's termination of the teacher's

employment for inattention to duty, failure to maintain an effective working relationship, and incompetence. The uncontroverted expert testimony was that these were symptomatic of his mental illness. Although these qualities in a teacher can be rated on a more objective basis than role modeling, we do not believe a logical distinction here can be made in applying the law. Similarly, we do not think the *Smith* requirements apply only to those cases in which the expert medical evidence is uncontroverted. Thus, on both points we hold that the rules outlined in *Smith* apply.

The board was required by *Smith* to consider "the duties required by the contract, the character and possible duration of the illness, the needs of the employer, and the extent to which the duties can be performed by another." *Smith*, 293 N.W.2d at 224. The findings by the board are extremely detailed. They lead to a conclusion that Davies' status as a role model was permanently impaired in her employment at the school with no hope of reconstruction due to the small size of the school district and the widespread knowledge of her status. Although not specifically mentioned, we find that the matters required by *Smith* to be considered were substantially included by the board in its determination. Davies was given a fair hearing by the board that met the legal requirements for the protection of her rights.

Our review convinces us that there is substantial evidence to support the board's conclusion. The board has established "just cause" for termination of Davies' employment under section 279.27 by a preponderance of the competent evidence. *See Board of Educ. v. Youel*, 282 N.W.2d at 680–82.

The final judgment of the district court is reversed. The decision of the board of directors is reinstated.

**REVERSED AND REMANDED.**