**BOARD OF DIRECTORS OF DES MOINES AREA COMMUNITY COLLEGE, Appellee,**

v.

**Janet A. SIMONS, Appellant.**

**No. 91–1960.**

Court of Appeals of Iowa.

Oct. 27, 1992.

Gerald L. Hammond of Sayre & Gribble, P.C., Des Moines, for appellant.

Peter L.J. Pashler and Ronald L. Peeler of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

Heard by HAYDEN, P.J., HABHAB, J., and McCARTNEY, Senior Judge.*

McCARTNEY, Senior Judge.

The district court found that an adjudicator had substituted his judgment for that of the board of directors of the appellee and as a consequence the court reinstated

* Senior Judge from the 2nd Judicial District serving on this court by order of the Iowa Supreme Court.

the decision of the board to terminate the employment of Janet A. Simons. The employee appeals. We affirm.

Simons began employment as a psychology teacher at Des Moines Area Community College (DMACC) in 1976. She received satisfactory performance evaluations and coauthored a psychology textbook with another faculty member. Her psychology classes were taken by students interested in becoming drug counselors.

While Simons enjoyed academic success, her private life was developing severe problems, mainly due to her association with Michelle Redden. Redden suffered a childhood of foster homes, physical and sexual abuse, and drug addiction. However, Redden later decided to improve herself and enrolled at DMACC, where she met Simons. Simons became a mentor of Redden and in 1983 she invited Redden to live at her house in Des Moines, Iowa. Redden eventually graduated as an honor student from Drake University in 1987.

However, Redden soon fell back into her old patterns of conduct. In 1988 Redden developed a romantic attachment to Verne Schuessler, who was a frequent user of cocaine and moved out of Simons' house for several months, but then moved back because of Verne's heavy use of cocaine.

Although Simons knew of Verne's reputation as a cocaine user, in August 1988 she allowed him to move into her home with Redden. In November 1988 Simons saw a former DMACC student use cocaine at her home, and she told him to leave. She also saw cocaine use at a New Year's Eve party at her home. In January 1989 Simons saw Redden free-basing cocaine in her home.

At about this same time, in late 1988 and early 1989, Simons' neighbors noticed a great increase in traffic coming and going from her house. The next door neighbor found a torch and syringe on his yard. The neighbors became concerned and contacted the police. All of the neighbors who testified stated that they did not notice any change in the level of this increased traffic at Simons' house which was dependent upon who was in the house at any particular time.

On March 30, 1989, an undercover police officer arranged to purchase cocaine from Robert Dale Jankovitz, a former DMACC student. In order to ascertain Robert's drug source, police officers followed him after the sale was arranged. Robert went to Simons' house and then returned with the cocaine, which he then sold to the undercover officer.

Police officers obtained a search warrant for Simons' house, which they executed on April 14, 1989. There the officers found 29 grams of cocaine, which was packaged in bundles for sale. The officers also found torches, scales, a mirror, and a grinder, which are items used to prepare cocaine for sale. In Simons' own room marijuana, hashish, and a pipe were found. The search also revealed several loaded firearms in the house. Redden was arrested at the time of the search, and Simons was arrested later that day.

Simons was charged with possession of a controlled substance (cocaine) with intent to deliver and with possession of a controlled substance (marijuana). A jury found her guilty of the marijuana possession charge. She was also found guilty of possession of a controlled substance (cocaine), a lesser included offense of the first charge. In order to find her guilty of possession, the jury had to find that the controlled substances were under Simons' conscious, personal dominion and control. The convictions were serious misdemeanors and she was given a suspended sentence and placed on probation. Simons did not appeal her convictions.

Redden pled guilty to possession of a controlled substance (cocaine) with intent to deliver and was sentenced to a term of imprisonment.

Simons was suspended from her teaching position while the criminal charges were pending. On March 7, 1990, after the criminal proceedings were concluded, the president of DMACC, Dr. Joseph Borgen, gave Simons notice of his recommendation to terminate her teaching contract. The rec-

ommendation was made for the following reasons:

1. Convictions of possession of cocaine and marijuana;
2. During 1988 and 1989, maintained a personal residence that was utilized for the sale and use of controlled substances;
3. During 1988 and 1989, maintained a personal residence that was utilized for the sale and use of controlled substances, including sales to former DMACC students;
4. During 1988 and 1989, maintained a personal residence that was utilized for the sale and use of controlled substances, including sales to her own former DMACC students;
5. Failing to terminate the activity set forth in (2), (3), and (4) above and notify proper authorities;
6. Criminal behavior involving controlled substances;
7. Aiding and abetting criminal behavior involving controlled substances;
8. The impact of the facts and circumstances surrounding her arrest, indictment, trial and conviction for possession of cocaine and marijuana on her ability to perform professional responsibilities; and
9. Failure to cooperate truthfully in an investigation conducted by the College into her fitness to perform her professional responsibilities.

The DMACC board of directors held a hearing at which evidence was presented. The evidence against Simons was as set forth above. At the hearing she admitted to occasionally using marijuana, but stated that she had decided to quit using it in February 1989, and that she gave her unused marijuana to Redden. Simons stated she had no knowledge of the marijuana which was found in her room during the police search, and felt someone else may have placed it there.

Simons also testified that she began to become suspicious in early 1989 about whether Redden was continuing to use drugs. She wrote a note to Redden asking whether she had received any money from the sale of drugs and asking her not to turn the house into a drug house. Redden denied the accusations. Simons testified that she then felt relieved, and she thereafter assumed that the increased traffic to her house was merely due to Redden receiving friends.

Simons presented the testimony of a psychiatrist, Dr. William Logan, who stated that while she was bright intellectually, she did not have much common sense. He also testified that she had difficulty demonstrating assertiveness, and that when confronted with problems, she tried to ignore them. Simons' colleagues also testified that she was the typical absent-minded professor who did not notice much about the world around her.

The board determined there was not sufficient evidence to prove claim No. 7, involving aiding and abetting. The board found the president had sufficiently proven the other eight claims. The board found that Simons knew of the drug use and sales in her home, but chose to ignore it. The board concluded Simons committed irresponsible errors of judgment by not destroying the illegal drugs in her home, by not forcing Redden and Verne to leave her home, and by giving marijuana to Redden, a former drug addict. The board noted that Simons continuously tolerated, and thus condoned, the very illegal activities she had condemned in her classes. The board concluded Simons' retention as a teacher would negatively impact DMACC's reputation and would undercut police efforts to combat illegal drug activity. After considering all of these factors, the board determined there was just cause to terminate Simons' teaching contract under Iowa Code section 279.27.

Simons appealed and an adjudicator was selected pursuant to section 279.17. The adjudicator examined each of the eight claims separately, and came to the conclusion there was no just cause for termination under any of the claims.

The board then appealed to district court, pursuant to section 279.18. The court found the adjudicator had improperly sub-

stituted his judgment for that of the board. The court concluded the board's findings were supported by a preponderance of the evidence. The court also concluded there was just cause for Simons' termination due to her convictions for possession of cocaine and marijuana, her admission to using marijuana, her knowledge of drug use in her home, and her failure to act under the circumstances. Hence her appeal to this court.

■ Our review of the district court's decision is at law for the correction of errors under the seven standards set forth in section 279.18. *Board of Directors v. Davies*, 489 N.W.2d 19, 23 (1992). In our review, we give weight to the findings of fact made by the board of directors, but are not bound by them. *Id.* We examine the evidence to determine if the decision of the board has support in a preponderance of the evidence in the record as a whole. *Id.*

■ The board's factual findings are normally conclusive when the facts are in dispute or when reasonable minds may differ on the inferences drawn from the evidence. *Board of Directors v. Justmann*, 476 N.W.2d 335, 338 (Iowa 1991). The board is uniquely situated to pass on the credibility of the various witnesses at the hearing. *Id.*

■ Although the burden of proving just cause is on the president, Simons must demonstrate error in order to succeed in this appeal. *See Everett v. Board of Education*, 334 N.W.2d 320, 322 (Iowa App. 1983).

She contends that her convictions for possession of cocaine and marijuana, standing alone, cannot constitute just cause for her termination as a teacher. She then contends that the other claims against her are not supported by a preponderance of the evidence.

■ After examining the record as a whole, we conclude the board's factual findings are supported by a preponderance of the evidence. The evidence clearly shows that drug sales were taking place at Simons' house, and that the neighbors around Simons' house were aware of that fact. Simons claims, however, that because of her psychological character, she was only suspicious that drug sales were taking place, and she had no actual knowledge of any such sales. The board, however, chose not to believe Simons' testimony that although she lived in the house where drug sales were taking place and although she used the den where the drugs and tools of the trade were kept, she was unaware of any illegal activity. As noted above, the board was in the best position to judge credibility.

■ We further conclude there is sufficient evidence to support the finding of the board that Simons was unable to perform her professional abilities due to the impact of her conduct and the convictions. The board found that her leadership and role model effectiveness had been adversely affected. As was noted in the recent *Board of Directors v. Davies* case, there is considerable precedent for requiring a teacher to be a good role model. 489 N.W.2d at 24–25. We agree with the board's conclusion that Simons' retention would negatively impact the college's reputation. The commander of the Vice and Narcotics Unit of the Des Moines Police Department testified that her reinstatement would undercut police efforts by giving the impression that drug activity is acceptable.

■ We also find there was sufficient evidence that Simons failed to cooperate truthfully in the investigation conducted by the college. She consistently told DMACC officials that she knew nothing about the marijuana and cocaine found in her home. However, we believe the preponderance of the evidence shows Simons knew there were illegal drugs in her home, but chose to ignore that fact.

■ We look at all of the reasons relied upon by the board in determining whether there was just cause for Simons' termination. While we are limited to the reasons stated in the president's recommendation in making our independent determination of whether just cause to terminate existed, it is not necessary that each allega-

tion constitute just cause in and of itself; rather, we consider all of the allegations as a whole to determine whether the just cause requirement is satisfied. *See Everett v. Board of Education,* 334 N.W.2d 320, 321 (Iowa App.1983).

■ The term "just cause" includes legitimate reasons relating to teacher fault. *Davies,* 489 N.W.2d at 23. In the context of teacher fault a "just cause" is one which directly or indirectly significantly and adversely affects what must be the ultimate goal of every school system: high quality education for the district's students. *Briggs v. Board of Directors,* 282 N.W.2d 740, 743 (Iowa 1979). It relates to job performance, including leadership and role model effectiveness. *Id.* "Just cause" cannot include reasons which are arbitrary, unfair, or generated out of some petty vendetta. *Id.* The concept of "just cause" is a flexible one; each case depends on its own circumstances. *Everett,* 334 N.W.2d at 321.

■ We conclude there was just cause for the termination of Simons' teaching contract. It is clear the president's reasons for recommending her termination were not arbitrary or unfair, but were based on legitimate concerns of the College about her continued effectiveness as a teacher. In view of her conviction for possession of cocaine and marijuana, her admission to using marijuana, and her admission of giving marijuana to Redden, we believe there is just cause for the College's decision to terminate.

After considering the record as a whole, we conclude the decision of the board that there was just cause to terminate the teaching contract of Janet Simons is supported by a preponderance of the evidence. We affirm the decisions of the district court and the board of directors.

AFFIRMED.